**BANCO NACIONAL de CUBA,**
Appellant,

v.

**The FIRST NATIONAL CITY BANK OF NEW YORK, Respondent.**

**Nos. 125–126, Dockets 32533, 33864.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 30, 1973.

Decided May 11, 1973.

Bryan in the Southern District of New York, 270 F.Supp. 1004, finding that the confiscation of National City Bank's property in Cuba was a violation of international law and that Banco Nacional and the Cuban Government were one and the same for the purposes of this litigation. On appeal, this court held that the act of state doctrine applied to bar adjudication of National City Bank's counterclaim and reversed the decision of the District Court, not reaching, of course, the merits of the District Court decision. The Supreme Court, 400 U.S. 1019, 91 S.Ct. 581, 27 L.Ed.2d 630 granted certiorari and remanded the case to this court for reconsideration in the light of a letter from the Legal Adviser of the Department of State to the Supreme Court indicating that the foreign policy interests of the United States would not be injured by litigation of the merits of the instant case. This court thereupon entered a second opinion, 442 F.2d 530, adhering to its original result. The Supreme Court again granted certiorari, and, reversing this court, held that the act of state doctrine did not bar consideration of the merits. The Supreme Court remanded the case to this court for the second time for "consideration of [Banco Nacional's] alternative bases of attack on the judgment of the District Court." First National City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 770, 92 S. Ct. 1808, 1814, 32 L.Ed.2d 466 (1972).

The facts giving rise to this lengthy and involved litigation are fully stated in the earlier opinion of this court, 431 F.2d 394 (2d Cir. 1970), and it is unnecessary to recount them here. Suffice it to say that Banco Nacional originally brought suit in the District Court for the Southern District of New York for (1) the excess realized by National City Bank on the sale of collateral held as a security for a loan, and (2) for deposits by nationalized Cuban banks in National City Bank in New York. National City Bank counterclaimed, arguing that the Republic of Cuba was the real party in interest, that the Cuban government was indebted to

Victor Rabinowitz, New York City (Leonard Boudin, Michael Krinsky, Dorian Bowman, and Eric M. Lieberman, Rabinowitz, Boudin & Standard, New York City, on the brief), for appellant.

Henry Harfield, New York City (Herman E. Compter, James B. Keenan, Shearman & Sterling, New York City, on the brief), for appellee.

Before LUMBARD and HAYS, Circuit Judges, and BLUMENFELD, Chief Judge.*

HAYS, Circuit Judge:

The involved history of this case began in July, 1967 with the decision of Judge

* Of the United States District Court for the District of Connecticut, sitting by designation.

it for the value of illegally expropriated property of National City Bank in Cuba, and that it was entitled to set off this obligation as a complete defense to the claims asserted by Banco Nacional. National City Bank then moved for summary judgment. The District Court granted the motion and Banco Nacional appealed.

■ Apart from the act of state defense Banco Nacional presented two major arguments[1] in the District Court (1) that National City Bank's counterclaim cannot properly be asserted against Banco Nacional but is directed at the government of Cuba, and (2) that in any event the nationalization of National City Bank's property in Cuba did not violate international law. The District Court found against Banco Nacional on both points, holding (1) "There is no serious question that the Government of Cuba and Banco Nacional are one and the same for the purposes of this litigation" and (2) "The totality of circumstances presented by this case—a patent failure to provide adequate compensation, a retaliatory confiscation by a foreign government, and discrimination against United States nationals—compel a finding that the Cuban decree directing confiscation of First National City's property was in direct contravention of the principles of international law. Thus First National City is entitled to set-off against the first claim for relief such amount as may be due and owing to it from the Cuban Government as compensation for the seized Cuban properties, and I so hold." 270 F.Supp. 1004, 1006, 1010 (S.D.N.Y.1967).

We agree with the judgment of the District Court.

## I.

In respect to the expropriation of National City Bank's property in Cuba the Republic of Cuba and Banco Nacional acted as a single entity. We therefore have no difficulty in finding that for the purposes of this litigation Banco Nacional is the alter ego of the Republic of Cuba, or as the District Court said, "the Government of Cuba and Banco Nacional are one and the same for the purposes of this litigation."

■ The undisputed evidence in the record amply supports the conclusion that Banco Nacional and the government of Cuba acted as one in the nationalization of National City Bank's property.

Law No. 891 of October 14, 1960 provided:

> "The banking function is hereby declared of public interest and from this moment on, only the State shall be authorized to exercise it through the organizations created for that purpose . . . ."

Law No. 891 also provided that nationalization was to "be carried out through Banco Nacional de Cuba."

On Friday, September 16, 1960, the take-over of National City Bank's assets in Cuba began. Late in the day, the vice-president of National City Bank in charge of Cuban operations, Juan D. Sanchez, began to receive telephone calls from the officers in charge of the branches of National City Bank in Cuba indicating that the Cuban militia were demanding the keys to the National City Bank's properties. At 11:00 P.M. on the 16th, Sanchez contacted one Bustabad, a member of the militia and a delegate of the bank employee's union. Bustabad stated that the militia had received orders *from Banco Nacional de Cuba* to

[1]. Banco Nacional also contends that the counterclaim of National City Bank was procedurally invalid since it was directed at the Republic of Cuba and not at Banco Nacional. Banco Nacional argues that the Republic of Cuba is not an "opposing party" in the present suit within the meaning of Rule 13 of the Federal Rules of Civil Procedure. Since we conclude that Banco Nacional and the Republic of Cuba are one and the same for the purposes of this litigation, it follows that the Republic of Cuba is an "opposing party" within the meaning of Rule 13 and that, therefore, the counterclaim was properly asserted.

occupy all of National City Bank's branches.

On the night of the 16th all of National City Bank's branches were occupied by the Cuban militia acting on orders from officials of Banco Nacional.

On Monday, September 19th, Sanchez, at the instructions of Cuban officials, appeared at the main office of National City Bank in Havana. Here he found armed men patrolling the bank, men who were members of the bank employee's branch of the militia. Sanchez was officially informed of the nationalization and told that Banco Nacional officials were taking over the operation of the bank. The official order nationalizing the bank was signed by Che Guevara, Minister of State, as President of Banco Nacional.

All of these facts, uncontested by Banco Nacional, point inescapably to the conclusion that Banco Nacional and the government of Cuba acted as one in implementing the nationalization policy.

Appellant urges that Banco Nacional was an independent juridical entity, an "autonomous organization" free from the control of the Cuban government. However, we are not concerned with any theoretical overall relationship between the bank and the Cuban government. The decisive facts here are those which show the function of Banco Nacional in the expropriation of National City Bank's property in Cuba. Those facts clearly indicated Banco's active role as a mere arm or division of the Cuban government.

## II.

■ We see no reason to re-open the question whether the Cuban expropriation violated international law. This court's decisions in Banco Nacional de Cuba v. Sabbatino, 307 F.2d 845 (2d Cir. 1962), reversed on other grounds, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) and Banco Nacional de Cuba v. Farr, 383 F.2d 166 (2d Cir.), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1967) establish that the actions of the government of Cuba and Banco Nacional in the instant case were violations of international law.

Affirmed.