

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2002

# Transamerica v. Aviation Ofc Amer

Precedential or Non-Precedential: Precedential

Docket No. 00-3635

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Transamerica v. Aviation Ofc Amer" (2002). *2002 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 24, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3635

TRANSAMERICA OCCIDENTAL LIFE INSURANCE
COMPANY,

Appellant

v.

AVIATION OFFICE OF AMERICA, INC.;
INTERNATIONAL INSURANCE COMPANY

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(Dist. Court No. 00-cv-02478)
District Court Judge: John W. Bissell

Argued on December 4, 2001

Before: ALITO, RENDELL, and AMBRO, Circuit Jud ges.

(Opinion Filed: May 24, 2002)

REID A. EVERS (Argued)
Transamerica Occidental Life
Insurance Company
Law Department
1150 South Olive
Los Angeles, CA 90015




DONALD HOROWITZ
24 Bergen Street
Hackensack, NJ 07601

Counsel for Appellant

ANTHONY I. PYE (Argued)
Suite 309
76 South Orange Avenue
South Orange, NJ 07079

Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

This case arises from an intricate network of corporate

relationships and a complex arrangement of insurance agreements. Pursuant to corporate restructuring, International Insurance Company ("IIC") assumed the rights and obligations concerning certain agreements of two companies, United States Fire Insurance Company ("U.S. Fire") and North River Insurance Company ("North River"). U.S. Fire and North River brought claims against Transamerica Occidental Life Insurance Company ("Transamerica") in Texas. Transamerica then brought suit against IIC in New Jersey, raising the same issues presented in the Texas action. IIC argued to the New Jersey District Court that the New Jersey action should have been barred as a compulsory counterclaim that Transamerica should have raised in the Texas action. Transamerica claimed that Federal Rule of Civil Procedure 13(a) is inapplicable because IIC was not a named "opposing party" in the Texas action. The District Court agreed with IIC and found that Transamerica was an opposing party because, for the purposes of the litigation, it was equivalent in identity to U.S. Fire and North River, the named parties in the original action. We agree and affirm the District Court's dismissal of Transamerica's claims.

I.

A.

In 1985, the Aviation Office of America, Inc. ("AOA") was a Texas insurance agency that acted as a managing general agent for the aviation insurance business of Crum & Forster, Inc. ("C&F "). AOA issued insurance policies on behalf of C&F 's insurance companies, including U.S. Fire and North River, and arranged reinsurance protection for those policies.

On December 15, 1985, AOA entered into two reinsurance agreements ("treaties") protecting workers' compensation insurance policies that had been issued by AOA on behalf of C&F 's insurance companies and that covered employees in the aviation industry. The first treaty, the "Primary Treaty," provided reinsurance of C&F policies for losses up to $250,000. The second treaty, the"Excess Treaty," provided reinsurance for losses up to $750,000 beyond the first $250,000. Both treaties were "quota share" treaties, under which the reinsurers agreed to accept a fixed percentage of all risks declared under the treaties by AOA. Each of the treaties contained an arbitration provision under which any dispute arising from the treaties would be arbitrated in Texas pursuant to the Texas State Arbitration Law. Both treaties were renewed as of January 1, 1987, until December 31, 1987.

The Zimmerman Line Slip, Inc. ("Line Slip") was one of the reinsurers that subscribed to both treaties, accepting a 25 percent share of the premium and losses for each year for both treaties. The Line Slip was a reinsurance pool that consisted of member companies that contracted with a pool

manager to act as the agent of the member companies. The Line Slip manager in 1985 was Zimmerman, Green, Inc. ("ZGI"), which by 1987 had changed its name to Zimmerman Line Slip, Inc. ("ZLSI"). The relationship between the pool members and the pool manager was governed by a Management Agreement, under the terms of which the pool members agreed to accept a set portion of the total risks borne by the pool manager. Transamerica subscribed to a 23.53 percent share of the Line Slip in

1985 and a 6.81 percent share in 1987. As a Line Slip member, Transamerica received its share of the premium and paid its share of the losses during this time.

In November 1992, North River commenced an arbitration against all of the reinsurers under the 1985 treaties, including the Line Slip, seeking reimbursement for disputed losses. After commencement of the arbitration, C&F underwent corporate restructuring, by which IIC assumed the obligations of North River and U.S. Fire under all policies issued on their behalf by AOA. Effective January 1, 1993, IIC was assigned the right to collect any reinsurance related to those policies. To the extent that the reinsurance contracts contained "anti-assignment" clauses, North River and U.S. Fire agreed to collect the reinsurance proceeds for the benefit of IIC. Furthermore, IIC was given power of attorney to pursue collections in the names of North River and U.S. Fire. IIC thereafter continued to pursue collection of the amounts owed under the treaties. After the Line Slip manager became insolvent in June 1995, IIC continued to seek collection from the reinsurers directly.

In January 1998, IIC's agent for reinsurance collections, Resolution Reinsurance Services Corporation ("RRSC"), wrote to Transamerica stating its representation of IIC. RRSC notified Transamerica of the C&F restructuring and of IIC's succession to all of the rights and liabilities under the policies originally issued by AOA on behalf of North River and U.S. Fire. In December 1998, Transamerica denied any liability under the treaties and refused to proceed with arbitration.

On March 2, 1999, North River and U.S. Fire filed a complaint against Transamerica in the District Court of the State of Texas, Dallas County. On March 29, 1999, Transamerica removed this action to the United States District Court for the Northern District of Texas, and this case is pending as North River Insurance Co. v. Transamerica Occidental Life Insurance Co., No. 3-99CV0682-L ("Texas action"). In the Texas action, North River and U.S. Fire, represented by IIC, seek to compel Transamerica to arbitrate the dispute under the treaties. North River and U.S. Fire moved for and were granted leave

to file an amended complaint. The amended complaint added a cause of action for breach of contract and sought recovery of monetary damages. In addition, the amended complaint sought a judgment declaring that the treaties were binding and enforceable and that Transamerica was obligated to North River and U.S. Fire under the treaties. In February 2000, the plaintiffs agreed to permit Transamerica to file a late answer and agreed not to oppose a motion for leave to file a late counterclaim to seek recovery of the amounts Transamerica had paid under the treaties.

Instead of filing an answer or counterclaim in the Texas action, however, in May 2000, Transamerica brought suit against IIC and AOA in the United States District Court for the District of New Jersey ("New Jersey action"), seeking a declaration that it was not liable under the treaties and seeking repayment of the amounts it had already paid. Transamerica failed to note the Texas action as a related case in the New Jersey action although it was a party to and had made the same allegations in that action.

In September 2000, IIC filed a motion in New Jersey District Court to dismiss Transamerica's complaint against both IIC and AOA. In October 2000, the District Court issued an order from the bench granting IIC's motion to dismiss this action.

B.

In dismissing the New Jersey action, the District Court held that the claims asserted in that action should have been brought as compulsory counterclaims against IIC pursuant to Fed. R. Civ. P. 13(a) in the Texas action. The District Court further held that although AOA might not be an opposing party, it could be joined as an additional party under Rule 13(h). Finally, the District Court rejected Transamerica's argument that the Texas district court lacks subject matter jurisdiction because North River and U.S. Fire do not have standing in the Texas action. Transamerica then took this appeal.

Appellant Transamerica asks us to reverse the District Court's grant of IIC's motion to dismiss. Transamerica argues that because IIC is not a named opposing party in

5

the Texas action, the New Jersey claims cannot be deemed compulsory counterclaims in the Texas action under Rule 13(a). Transamerica also contends that the District Court for the Northern District of Texas does not have jurisdiction over the Texas action because North River and U.S. Fire assigned their interest in the reinsurance treaties to IIC and thus lack standing to bring the Texas action against Transamerica.

Appellees AOA and IIC urge this Court to affirm the District Court on the ground that IIC was the equivalent of

an opposing party in the Texas action. Appellees emphasize that IIC acted in the names of the original parties reinsured under the treaties, North River and U.S. Fire; that IIC conducted the litigation in the Texas action as attorney-in-fact for North River and U.S. Fire; that the claims to compel arbitration and for breach of contract under the reinsurance treaties were the same as those in the Texas action; that North River and U.S. Fire assigned the rights to any recovery under the treaties to IIC; and that IIC formally ratified the commencement of the Texas action and agreed to be bound by its outcome. Appellees also accuse Transamerica of forum-shopping and failing to disclose the existence of the Texas action to the District Court in the New Jersey action. As for Transamerica's argument that North River and U.S. Fire lack standing in the Texas action, Appellees note that North River and U.S. Fire remain the parties to the contract with respect to Transamerica. We agree with Appellees' position and thus affirm the District Court's grant of IIC's motion to dismiss the New Jersey action.

II.

A.

We exercise plenary review over the grant of a motion to dismiss. See Lorenz v. CFX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993). Accordingly, we review de novo the District Court's determination that Transamerica's suit should have been pursued as a compulsory counterclaim in the Texas action. See Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1058 & n.1 (3d Cir. 1978).

6

B.

Rule 13(a) of the Federal Rules of Civil Procedure provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The policy underlying this rule is judicial economy. See Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."); Southern Construction Co. v. Pickard, 371 U.S. 57, 60 (1962) (stating that the purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters"); Alden v. Packel, 524 F.2d 38, 51 (3d Cir. 1975) (describing "the fundamental policy underlying Rule 13" as "the expeditious resolution of all controversies growing out of the same transaction or occurrence or between the same parties in a single suit").

For a claim to qualify as a compulsory counterclaim,

there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978).1 The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." Id. Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or

_____

1. Other circuits also look to the "logical relationship" between the claim and counterclaim to determine whether they arise from the "same transaction or occurrence." See, e.g., Gildorn Sav. Ass'n v. Commerce Sav. Ass'n, 804 F.2d 390 396 (7th Cir. 1986); United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979); Columbia Plaza Corp. v. Security Nat'l Bank, 525 F.2d 620, 625 (D.C. Cir. 1975); Diamond v. Terminal Ry. Ala. State Docks, 421 F.2d 228, 236 (5th Cir. 1970).

are offshoots of the same basic controversy between the parties. See id.; Great Lakes Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961). In short, the objective of Rule 13(a) is to promote judicial economy, so the term "transaction or occurrence" is construed generously to further this purpose.

This case, however, presents the question whether the rationales supporting a liberal reading of "transaction or occurrence" in Rule 13(a) also apply to the term "opposing party." A narrow interpretation of "opposing party" would lead us to read it strictly as a named party who "asserts a claim against the prospective counter-claimant in the first instance."2 First National Bank v. Johnson County National Bank & Trust Co., 331 F.2d 325, 328 (10th Cir. 1964); see also Cincinnati Milacron Industries, Inc. v. Aqua Dyne, Inc., 592 F. Supp. 1113 (S.D. Ohio 1984) (finding that Rule 13(a) did not permit the filing of a compulsory counterclaim against Cincinnati Milacron Industries, Inc. because it was not a party to the litigation against Milacron Marketing Company, a separate corporate entity from Cincinnati Milacron Industries, Inc.).

This Court has not yet ruled on the issue, and there are very few cases interpreting "opposing party" in other circuits. A few courts have found in similar cases, however, that an unnamed party may be so closely identified with a named party as to qualify as an "opposing party" under Rule 13(a). In Avemco Insurance Co. v. Cessna Aircraft Co., 11 F.3d 998 (10th Cir. 1993), the Tenth Circuit recognized an insurer-subrogee, though not named as a party to the original litigation, to be an opposing party for Rule 13(a) purposes because of its close relationship with the named opposing party. Id. at 1001. Avemco was the insurer of a plane owner and pilot (the "insured") who was subject to

two personal injury claims brought by passengers who were injured in a plane crash. Avemco settled the first claim against the insured. The second personal injury suit was brought against both the insured and the manufacturer of the plane. The manufacturer filed a third-party complaint

---

2. Cf. Fed. R. Civ. P. 17(a) (stating that "every action shall be prosecuted in the name of the real party in interest").

8

against the insured for negligent operation, but the insured filed no counterclaim against the manufacturer for contribution or indemnification for the settlement amount in the first, settled action. Avemco then filed a new action against the manufacturer for indemnification and contribution in the first action, but the court determined that Rule 13(a) barred this action because it should have been brought as a compulsory counterclaim in the second personal injury action. The Tenth Circuit stated that "[i]n a situation such as this, where the insurer has controlled the defense in both actions, there is little to commend allowing the insurer to sit idly by during the subsequent litigation, only to bring a separate action against the very same defendant at a later date." Id.

The Second Circuit also found that a party not named in litigation may still be an opposing party for Rule 13 purposes in certain cases in which the party is functionally identical to the actual opposing party named in the litigation. In Banco Nacional de Cuba v. First National City Bank of New York, 478 F.2d 191 (2d Cir. 1973), the Second Circuit treated a party not named in the litigation as an opposing party after concluding that the parties were "one and the same for the purposes of th[e] litigation." Id. at 193 n.1. The Court held that because the parties "acted as a single entity" and because one was the alter ego of the other, both were "opposing parties" within the meaning of Rule 13.

In Rohm and Haas Co. v. Brotech Corp., 770 F. Supp. 928 (D. Del. 1991), Judge Roth observed that "Rule 13(a) is not limited in its application to original parties." Id. at 934. Although Rohm and Haas Co. involved a counterclaim brought against one original party in addition to others, Judge Roth reasoned that the counterclaim was compulsory because it was brought against parties related to the original party, which made their joinder appropriate. See id.

In each of these cases, courts interpreted "opposing party" broadly for essentially the same reasons that courts have interpreted "transaction or occurrence" liberally--to give effect to the policy rationale of judicial economy underlying Rule 13. Where parties are functionally

9

equivalent as in Avemco, where an unnamed party controlled the litigation, or where, as in Banco Nacional, an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13.

The doctrine of res judicata provides further support for this approach. Courts have recognized the close connection between Rule 13(a) and the doctrine of claim preclusion. See, e.g., Publicis Communication v. True North Communications Inc., 132 F.3d 363, 365 (7th Cir. 1997) ("The definition of a compulsory counterclaim . . .. mirrors the condition that triggers a defense of claim preclusion (res judicata) if a claim was left out of a prior suit."). While the Publicis court acknowledged that it is debatable whether Rule 13(a) is "strictly an application of claim preclusion," it noted that "both the scope of the doctrine and its rationale are the same as those of claim preclusion, and most of the time the label is inconsequential." Id. at 366. It is therefore noteworthy that in the claim preclusion context, where an earlier lawsuit establishes the rights or liabilities of a party, both the named party and those in privity with it are bound by the holding. See, e.g., Corestates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999) (stating that claim preclusion applies to "the same parties and their privities"); Martino v. McDonald's System, Inc., 598 F.2d 1079, 1083 (7th Cir. 1979) ("The principle of res judicata at issue here treats a judgment on the merits as an absolute bar to relitigation between the parties and those in privity with them. . . .").

III.

The District Court determined that IIC was the equivalent of an opposing party because IIC was assigned the rights of the Texas plaintiffs, North River and U.S. Fire, and IIC ratified the assignment. We agree.

The focal point of our analysis is the nature of the relationship between IIC and the Texas plaintiffs. In the Texas action, the plaintiffs are North River and U.S. Fire; in the New Jersey action, the defendants are AOA and IIC. As part of a corporate restructuring, IIC assumed from North

River and U.S. Fire all of the obligations under insurance policies issued on their behalf by AOA. North River and U.S. Fire assigned their rights under the Treaties at issue to IIC, which ratified the assignment. IIC then conducted the Texas litigation on behalf of and in the name of North River and U.S. Fire. Pursuant to the assignment and ratification, IIC will be assigned any recovery by the Texas plaintiffs. Moreover, because IIC is a successor in interest to North River and U.S. Fire, a determination that Transamerica was not a reinsurer of North River and U.S. Fire will necessarily preclude any claim IIC might bring as assignee of their rights. In short, IIC is the successor in

interest and assignee of all rights implicated by these actions and has conducted the litigation on behalf of North River and U.S. Fire. Thus, by virtue of the assignment, the rights that are at stake in the Texas litigation are actually IIC's rights, not North River or U.S. Fire's, and this is the reason why IIC is conducting the litigation in the Texas action.

Avemco Insurance Co. v. Cessna Aircraft Co. is the case most instructive for our analysis here. In Avemco, the insurer, as subrogee of its insured, conducted the litigation in both actions and was thus considered to be an opposing party within the meaning of Rule 13(a) although it was not a named party in either action. The Tenth Circuit held that Rule 13(a) applied to the named party "and, by subrogation, to Avemco" because "an insurer as subrogee has no greater rights than those possessed by its insured." Id. at 1000. Similarly, in Banco Nacional de Cuba v. First National City Bank of New York, the Second Circuit determined that an unnamed party was an opposing party under Rule 13 due to its relationship to the named party. In particular, the Court stated that the unnamed party and its alter ego, the named party, were "one and the same for the purposes of this litigation." Id. at 193 n.1. Here, IIC, though not a formal subrogee or corporate alter ego, is the successor in interest and assignee of the rights of the named parties, and is conducting the litigation in Texas as attorney-in-fact on behalf of the named parties. As in Avemco and, to a lesser extent, Banco Nacional, the rights and interests of IIC, the unnamed party in the Texas action, are so closely identified with North River and U.S. Fire, the named

11

parties, that IIC must be considered an opposing party for Rule 13(a) purposes.

It is significant that the insurer, IIC, was actually the party controlling the litigation in both actions, as was the case in Avemco. This is an essential component of our analysis because it establishes that Transamerica was aware of the identity of interests between IIC and the Texas plaintiffs. Thus, Transamerica may fairly be charged with the responsibility of filing a compulsory counterclaim against IIC in the Texas litigation. This may seem to be a harsh rule, but because Transamerica was on notice of IIC's interest in the Texas action and identity with the Texas plaintiffs, it is no harsher than Rule 13(a) claim preclusion in any other context. See, e.g., Martino v. McDonald's System, Inc., 598 F.2d 1079, 1082 (7th Cir. 1979) ("Rule 13(a) is in some ways a harsh rule. It forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them.").

Furthermore, insofar as Rule 13(a) embodies the scope and rationale of the doctrine of claim preclusion, it stands to reason that the term "opposing party" in Rule 13(a) should mirror the understanding of the parallel actors in the res judicata context. Res judicata acts as a bar to

relitigation of an adjudicated claim between parties and those in privity with them. See, e.g., Corestates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999); Martino, 598 F.2d at 1083. The rationale is that if the adjudication of an action is binding on parties in privity with the parties formally named in the litigation, then any claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims. This is the same reasoning that underlies Rule 13(a). Therefore, "opposing party" in Rule 13(a) should include parties in privity with the formally named opposing parties. Here, there is privity between IIC and the Texas plaintiffs because the Texas plaintiffs assigned IIC their rights with respect to this litigation. See Mandeville & Jameson v. Joseph Riddle & Co., 5 U.S. 290, 298 (1803) ("[T]here is a privity between the assignor and his immediate assignee"); In re 815 Walnut Associates, 183 B.R. 423, 432 (Bankr. E.D. Pa. 1995) ("An

12

assignee is normally understood to stand in privity to his assignor."). As a result, IIC should be considered an opposing party for Rule 13(a) purposes because it is in privity with North River and U.S. Fire.

Additionally, we note that there is no question that the two actions arise out of the same contracts. In the New Jersey action, Transamerica seeks a declaration that it is not liable under certain treaties entered into by its agents-- ZGI in 1985 and ZLSI in 1987. Transamerica also seeks to recover any sums that it mistakenly paid under these treaties to AOA and IIC. In the Texas action, North River and U.S. Fire seek payment by Transamerica of all the losses of the 1985 and 1987 treaties that Transamerica has not paid. The same reinsurance agreements are at issue in both actions.

Finally, adjudicating these issues at once is consistent with the approach to judicial economy underlying the Federal Rules of Civil Procedure. Here, it is clear that holding separate trials on each of the claims would"involve a substantial duplication of effort and time by the parties and the courts." Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978). The two cases involve the same factual and legal issues because they involve the same controversy between the parties. Consequently, by finding the action at issue in this case to be barred as a compulsory counterclaim that Transamerica should have filed in the Texas action, we effectuate the purpose of Rule 13(a) "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Southern Construction Co. v. Pickard, 371 U.S. 57, 60 (1962).

Therefore, we agree with the District Court's determination and hold here that the term "opposing party" in Rule 13(a) includes IIC even though it was not a named party in the Texas litigation.

IV.

Having determined that Transamerica should have brought its claims in the New Jersey action against IIC as a compulsory counterclaim in the Texas action, we further

13

note that Transamerica's claims against AOA should also have been raised in the Texas action under Rule 13(h). Even though AOA cannot be considered an opposing party in the sense that IIC can, Rule 13(h) would permit the joinder of AOA as an additional party to the counterclaim that Transamerica should have brought in the Texas action.

Finally, Transamerica asserts that because U.S. Fire and North River assigned their interests in the treaties to IIC, they lack standing to sue under the treaties, and the District Court in the Texas action thus lacks subject matter jurisdiction. This argument fails because the assignment of rights between U.S. Fire and North River and IIC did not affect U.S. Fire and North River's standing to pursue reinsurance claims against Transamerica. Transamerica never consented to the assignment as was explicitly required by the reinsurance contracts for the assignment to be effective against Transamerica. Moreover, this jurisdictional claim should have been raised to the District Court in the Texas action.

In conclusion, we agree with the District Court that Transamerica's claims in the New Jersey action should have been brought as a compulsory counterclaim in the Texas action. Given the relationship of IIC to U.S. Fire and North River, it should be considered an opposing party under Rule13(a). Accordingly, we affirm the District Court's dismissal of Transamerica's complaint against IIC and AOA.

14

RENDELL, Circuit Judge, dissenting:

I respectfully dissent because neither the record nor the case law supports the expansive reading of Rule 13 espoused by the majority. I am, therefore, unwilling to make the leap from the rule's plain language --"opposing party" -- to find that Transamerica should have leveled its claims against IIC in the litigation brought by North River and U.S. Fire, to which IIC was never a party. If this ruling is left to stand, defendants will act at their peril in not joining, so as to be able to counterclaim against, any person or entity that has a stake in, or will be bound by, the outcome. This greatly expands the term "opposing party" beyond its clear meaning. I would adhere to the statutory language, especially in the murky fact pattern presented here, and given that "privity" was not argued by the parties, and would reverse the District Court.

Of the few cases that interpret "opposing party," the majority relies most heavily on Avemco Insurance Co. v. Cessna Aircraft Co., 11 F.3d 998 (10th Cir. 1993), the only case that comes remotely close to providing the basis for enlarging 13(a)'s scope. But the subrogation at issue there is clearly distinguishable from our facts. As subrogee, the insurer "stood in the shoes" of the insured once the claim was paid, a much closer case than the fact pattern here, in which we have no showing that North River and U.S. Fire were in the same position as IIC, or had identical rights and obligations.[1]

Further, I submit that Judge Holloway's dissent in Avemco is most persuasive. "Party," as he pointed out, means "a person whose name is designated on record as plaintiff or defendant," and "[t]he very concept of a

_____

[1]. Banco Nacional de Cuba v. First National City Bank of New York, 478 F.2d 191 (2d Cir. 1973), is similarly distinguishable. As the majority notes, the court there held that Cuba's national bank and Cuba "acted as a single entity" and one was the "alter ego" of the other. Id. at 193-94. The court based this conclusion on the facts that a Cuban law declared that the banking function would be exercised only by the state, that the suing bank was occupied by militia commanded by the Banco Nacional, and that the Minister of State was the President of Banco Nacional. There is nothing approaching those circumstances in this case.

15

counterclaim presupposes the existence or assertion of a claim against the party filing it." Id. at 1003 (Holloway, J., dissenting) (internal citations omitted). Moreover, he reasoned, a reading of "opposing party" that includes those not already named parties would impose mandatory intervention, which is not supported by case law or the Federal Rules of Civil Procedure. See id. (citing Martin v. Wilks, 490 U.S. 755 (1989) (holding that there is no obligation to intervene and pointing to Rule 24's permissive language), and Montgomery Ward Dev. Corp. v. Juster, 932 F.2d 1378, 1383 (11th Cir. 1991) (defendant who did not join and was not obligated to join a prior lawsuit could not "be barred now by a failure to have done so")).

Curiously, the District Court based its ruling on two opinions of other courts that found that counterclaims were compulsory where they were against an entity that was in fact party to the original litigation. There, additional defendants or plaintiffs were named in the second suit, but 13(a) still applied to the entity that was a named defendant in the first and a named plaintiff in the second. See AMP Inc. v. Zacharias, No. 87 C 3244, 1987 WL 12676 (N.D. Ill. June 15, 1987); Rohm & Haas Co. v. Brotech Corp. , 770 F. Supp. 928 (D. De. 1991). This is not the situation here, where IIC was never a party to the Texas litigation.

The majority further states that a broad reading of "opposing party" is justified by the policy of judicial economy that underlies Rule 13. But I suggest that

principles of claim preclusion generally provide sufficient protection against re-litigation of an adjudicated claim, and we need not turn this federal rule into a rule of claim preclusion for the sake of judicial economy. While some claim preclusion results from a proper application of Rule 13(a), this principle should not be employed to expand its boundaries. The fact that the effect of failing to plead a counterclaim can be explained in terms of claim preclusion does not mean that the rule's language should be interpreted to equate the two.

Moreover, this is not a proper case in which to expand, or expound on, the concept of "opposing party" because the record is unclear as to the relationship among IIC, North River, and U.S. Fire. There is a vague reference to an

assignment of rights, but it is not documented. What are its limits? Is it an assignment for collection? Notwithstanding the majority's assessment of the facts, namely that North River and U.S. Fire assigned their rights and obligations to IIC, and that IIC conducted the Texas litigation as attorney-in-fact for North River and U.S. Fire, the record fails to reflect the precise relationship among these entities, nor (contrary to the majority's assertion) does it contain any evidence of "control of litigation" by IIC. 2

In fact, IIC had the opportunity to clarify its role in the Texas litigation when Transamerica questioned whether IIC should have brought the action, but IIC, in response, did not join as plaintiff or intervene or indicate that it was an assignee or state that it was in control. Rather, it issued a "Ratification" that stated, "International hereby ratifies the commencement of the above-referenced action by Plaintiffs; authorizes its continuation; and agrees to be bound by the final, non-appealable judgment or award." Though it distanced itself then, IIC now argues that Transamerica should have counterclaimed against IIC -- presumably after having joined it in those proceedings.

In sum, when a federal rule that regulates the way litigation is conducted uses the words "opposing party," it means just that. In my view, none of the reasons put forth by the majority justifies departure from the plain language of the rule. Accordingly, I respectfully dissent.

---

2. Notably absent from the record is documentation of an actual assignment. Instead, the only evidence is an affidavit from IIC's lawyer, a court order from a case involving IIC and different parties, and correspondence among counsel. Even where these refer to some transfer of rights, they are unclear as to its precise contours. One letter from IIC's attorney states that IIC took financial responsibility for U.S. Fire and North River policies, but that the policies were not novated to IIC by the policyholders, while other correspondence indicates that certain North River and U.S. Fire policies were "novated or reinsured into IIC." The evidence of IIC's control of the Texas litigation is similarly vague, consisting only of the affidavit of IIC's attorney and a passing reference

in the Joint Status Report in the Texas litigation.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit