On Application for Rehearing.

STUART, Justice.
The opinion of March 7, 2008, is withdrawn, and the following opinion is substituted therefor.
Little Narrows, LLC, a real-estate-development company owned and operated *974 by Isaac David, sued real-estate broker Robert Scott and his wife Vicki Scott, d/b/a Re/Max Advantage South (“Re/ Max”), in the Jefferson Circuit Court, alleging breach of contract and fraud. The Scotts moved the trial court for a change of venue to the Shelby Circuit Court and subsequently moved to dismiss the action on the basis that Little Narrows’ action was based on the same facts and claims as an action pending in the Shelby Circuit Court; in response to the Scotts’ latter motion, the Jefferson Circuit Court dismissed Little Narrows’ action with leave to file its claims as counterclaims in the action pending in Shelby County. Little Narrows appealed the Jefferson Circuit Court’s dismissal of its claims. We reverse and remand.
I.
On March 3, 2005, Little Narrows entered into a real-estate listing agreement naming Re/Max as the listing agent for the sale of 73 lots in the Courtyard Manor subdivision in Shelby County; Isaac David’s ex-wife, real-estate agent Patti David, is shown on the agreement as the listing agent. The purpose of the listing agreement was to give Patti David and her company, List With Us, Inc., the exclusive right to sell the lots in the Courtyard Manor subdivision. Under Alabama law, real-estate agents such as Patti David, who are not licensed as real-estate brokers, must work under the direction of a licensed real-estate broker. Patti David accordingly operated as a listing agent and salesperson under the authority of Robert Scott, a licensed real-estate broker. Section 34-27-34(a)(2), Ala.Code 1975, provides, in pertinent part:
“A qualifying broker shall be held responsible to the [Alabama Real Estate] [Cjommission and to the public for all acts governed by this chapter of each salesperson and associate broker licensed under him or her and of each company for which he or she is the qualifying broker. It shall be the duty of the qualifying broker to see that all transactions of every licensee engaged by him or her or any company for which he or she is the qualifying broker comply with this chapter. Additionally, the qualifying broker shall be responsible to an injured party for the damage caused by any violation of this chapter by any licensee engaged by the qualifying broker.”
On April 26, 2005, Re/Max and Little Narrows entered into an addendum to the listing agreement.[1] Pursuant to trade standards and the custom in the industry, separate listing agreements were also subsequently entered into with all the builders operating in Courtyard Manor.
At some point, the business relationship between Isaac David and Patti David deteriorated. Isaac David alleges that Patti David, and by extension her broker Robert Scott, failed to perform their duties in a professional manner by not properly staffing the Courtyard Manor sales office, by not complying with the decisions made by the owners of the lots and the builders, and by not answering telephone calls and returning messages, among other things. Isaac David further alleges that he attempted to discuss these issues with Robert Scott, but that Scott refused to intervene in Patti David’s operation of the sales office for Courtyard Manor.
Patti David agrees that her business relationship with Isaac David deteriorated; she, however, alleges that it deteriorated after he began making repeated and insis *975 tent demands that she engage in sexual relations with him. She alleges that after she continually refused to do so, Isaac David threatened that he and his companies, Little Narrows and The David Group, Inc., would breach the terms of the listing agreement and cease working with her and further cause the builders and other entities associated with Courtyard Manor to cease working with her also.
On February 8, 2007, Patti David and “List With Us, Inc., d/b/a Re/Max Advantage South” sued Isaac David, Little Narrows, The David Group, Pat Morton, Guy Martin, and fictitiously named parties in the Shelby Circuit Court, alleging intentional interference with business or contractual relations, conspiracy, and breach of contract.[2] The named defendants subsequently moved to dismiss the action on the basis that Alabama law allows only licensed real-estate brokers — not agents like Patti David — to enter into listing agreements and to collect commissions. On April 26, 2007, Patti David filed an amended complaint clarifying that she was a real-estate agent operating under the authority of the licensed real-estate broker Robert Scott and his brokerage Re/Max, and that Re/Max was the party that was to actually receive the commissions on properties sold in Courtyard Manor. She also added a third-party-beneficiary claim alleging that she was the third-party beneficiary of the listing agreement between Little Narrows and Re/Max and asserting claims of breach of contract, “intentional, willful, and wrongful violation of duty,” and unjust enrichment.
On April 30, 2007, Little Narrows sued Robert Scott and his wife Vicki Scott, d/b/a Re/Max, in the Jefferson Circuit Court, alleging breach of contract and fraud and seeking a declaration that there were no existing valid contracts between the parties. On May 10, 2007, the Scotts moved for a change of venue to the Shelby Circuit Court on the basis that the action in Jefferson County was based on the same facts and claims as those in Patti David’s previously filed action in Shelby County. The Scotts also moved, pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss the complaint for failure to state a claim upon which relief could be granted.
Little Narrows opposed the Scotts’ motions and also filed its own motions seeking to disqualify the Scotts’ attorney and seeking a partial summary judgment. On June 8, 2007, the Jefferson Circuit Court denied the Scotts’ motion for a change of venue and denied Little Narrows’ motion to disqualify the Scotts’ attorney. On June 29, 2007, the Scotts moved the Jefferson Circuit Court to dismiss or abate Little Narrows’ action on the basis of § 6-5-440, Ala.Code 1975, which states:
“No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pen-dency of the former is a good defense to the latter if commenced at different times.”
On July 12, 2007, the Jefferson Circuit Court entered an order granting the Scotts’ motion to dismiss or to abate Little Narrows’ action, stating:
“It appears to the court that the issues are the same in both cases, that is, whether there was a valid agreement between [Re/Max] and Little Narrows, *976 LLC. There are claims for damages by [Re/Max] and [Patti] David against Little Narrows, LLC, and claims for damages by Little Narrows, LLC, against Robert Scott and Vicki Scott, d/b/a [Re/ Max], All the claims arise out of the same transaction or events.
“This court finds that a decision in the Shelby County case would be res judica-ta on the issues in this case. Therefore, the claims in this case are compulsory counterclaims in the action in Shelby County.
“This action is dismissed with leave for plaintiff to file counterclaims in the Circuit Court of Shelby County, Alabama.”
Little Narrows appeals.
II.
Little Narrows raises three issues; however, the only issue we ultimately must consider is whether the Jefferson County action and the Shelby County action are based on claims arising from the same facts and circumstances and asserted by the same parties so as to fall within the scope of § 6-5-440.[3] We have previously stated that “[w]hen the facts underlying a motion filed pursuant to § 6-5^40 are undisputed, as is the case here, our review of the application of the law to the facts is de novo.” Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 969 (Ala.2007) (citing Greene v. Town of Cedar Bluff, 965 So.2d 778, 779 (Ala.2007)).
III.
In Ex parte Breman Lake View Resort, L.P., 729 So.2d 849, 851 (Ala.1999), we stated:
“This Court has held that the obligation imposed on a defendant under Rule 13(a), Ala. R. Civ. P., to assert compulsory counterclaims, when read in conjunction with § 6-5-440, Ala.Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a ‘plaintiff in that action (for purposes of § 6-5-440) as of the time of its commencement. See, e.g., Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So.2d 414 (Ala.1995); Penick v. Cado Systems of Cent. Alabama, Inc., 628 So.2d 598 (Ala.1993); Ex parte Canal Ins. Co., 534 So.2d 582 (Ala. 1988). Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause. We affirm the general rule expressed in these cases; to do otherwise would invite waste of scarce judicial resources and promote piecemeal litigation.”
Thus, the question we must answer is whether the claims asserted by Little Narrows in the underlying action in Jefferson County are compulsory counterclaims that *977 should have been asserted in the Shelby County action. Rule 13(a), Ala. R. Civ. P., defines a “compulsory counterclaim” as
“any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.”
Little Narrows argues that its claims cannot be considered compulsory counterclaims because, it argues, its claims are claims against the Scotts and the Scotts were not “opposing parties]” in the Shelby County action when this action was filed in Jefferson County. The Shelby County action, Little Narrows argues, is an action filed by a real-estate agent (Patti David) against Isaac David and his companies, including Little Narrows, clients of the licensed real-estate broker with whom she was working. It would have been impossible, Little Narrows argues, for it to assert a counterclaim against the Scotts in the Shelby County action because, Little Narrows argues, the Scotts were not parties to that case.
The Scotts respond by arguing that the parties in the Shelby County action and the Jefferson County action are “substantially identical,” inasmuch as Patti David was an agent of the Scotts’ brokerage firm and was acting with their express authorization and approval when she asserted a third-party-beneficiary claim based on the contract between Re/Max and Little Narrows. (Scotts’ brief, pp. 19-20.) The Scotts further note that the doctrine of res judicata — upon which both § 6-5-440 and the compulsory-counterclaim rule are based — requires only the substantial identity of parties, not absolute identity. See, e.g., Century 21 Preferred Props., Inc. v. Alabama, Real Estate Comm’n, 401 So.2d 764, 770 (Ala.1981) (“Judgments can bind parties not party (or privy) to the litigation in question where the nonparties’ interests were represented adequately by a party in the original suit.”).
This Court has not previously considered the issue that is now before us, that is, whether the term “opposing party” as used in Rule 13(a) should be read strictly to mean a named party who has asserted a claim against the prospective counterclaim-ant in the first instance. However, the United States Court of Appeals for the Third Circuit discussed this issue at length in Transamerica Occidental Life Insurance Co. v. Aviation Office of America, Inc., 292 F.3d 384 (3d Cir.2002), and concluded that the term “opposing party” in the parallel federal rule should not be read strictly to encompass only named parties. After reviewing the existing caselaw on the topic, current United States Supreme Court Justice Samuel Alito wrote:
“In each of these cases, courts interpreted ‘opposing party’ broadly for essentially the same reasons that courts have interpreted ‘transaction or occurrence’ liberally — to give effect to the policy rationale of judicial economy underlying Rule 13. Where parties are functionally equivalent as in Avemco [Insurance Co. v. Cessna Aircraft Co., 11 F.3d 998 (10th Cir.1993) ], where an unnamed party controlled the litigation, or where, as in Banco Nacional [de Cuba v. First National City Bank of New York, 478 F.2d 191 (2d Cir.1973) ], an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13.
“The doctrine of res judicata provides further support for this approach. Courts have recognized the close connection between Rule 13(a) and the doctrine of claim preclusion. See, e.g., Publicis Communication v. True North Communications Inc., 132 F.3d 363, 365 (7th Cir.1997) (‘The definition of a com *978 pulsory counterclaim mirrors the condition that triggers a defense of claim preclusion (res judicata) if a claim was left out of a prior suit.’). While the Publicis court acknowledged that it is debatable whether Rule 13(a) is ‘strictly an application of claim preclusion,’ it noted that ‘both the scope of the doctrine and its rationale are the same as those of claim preclusion, and most of the time the label is inconsequential.’ Id. at 366. It is therefore noteworthy that in the claim preclusion context, where an earlier lawsuit establishes the rights or liabilities of a party, both the named party and those in privity with it are bound by the holding. See, e.g., CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir.1999) (stating that claim preclusion applies to ‘the same parties and their privities’); Martino v. McDonald’s System, Inc., 598 F.2d 1079, 1083 (7th Cir.1979) (‘The principle of res judicata at issue here treats a judgment on the merits as an absolute bar to relitigation between the parties and those in privity with them....’).
[[Image here]]
“... [Ijnsofar as Rule 13(a) embodies the scope and rationale of the doctrine of claim preclusion, it stands to reason that the term ‘opposing party’ in Rule 13(a) should mirror the understanding of the parallel actors in the res judicata context. Res judicata acts as a bar to relitigation of an adjudicated claim between parties and those in privity with them. See, e.g., CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir.1999); Martino, 598 F.2d at 1083. The rationale is that if the adjudication of an action is binding on parties in privity with the parties formally named in the litigation, then any claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims. This is the same reasoning that underlies Rule 13(a). Therefore, ‘opposing party’ in Rule 13(a) should include parties in privity with the formally named opposing parties.”
292 F.3d at 391-93 (footnotes omitted). However, “ ‘[although we attempt to weave a consistent pattern with our interpretations of our rules of civil procedure, which were patterned after the federal rules of civil procedure, we are constrained not to follow the federal precedent in this case.’ ” Ex parte Phillips, 900 So.2d 412, 417 (Ala.2004) (quoting Western Union Tel. Co. v. Crowder, 547 So.2d 876, 879 (Ala.1989)).
Rather, our construction of Rule 13(a) begins with the plain language of the rule itself. Ex parte Haynes Downard Andra & Jones, LLP, 924 So.2d 687, 692 (Ala. 2005) (“ ‘ “We start with the basic premise that words used in court rules must be given their plain meaning.” ’ ” (quoting Southeastern Meats of Pelham, Inc. v. City of Birmingham, 895 So.2d 909, 913 (Ala.2004), quoting in turn Nieto v. State, 842 So.2d 748, 749 (Ala.Crim.App.2002))). A “compulsory counterclaim” is defined in Rule 13(a) as
“any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.”
(Emphasis added.) Black’s Law Dictionary defines a “party” as: “[o]ne by or against whom a lawsuit is brought.” Black’s Law Dictionary 1154 (8th ed.2004). It is undisputed that the Shelby County action was neither brought by nor against the Scotts; thus, the Scotts were not “parties” to it. This is true regardless of the relationship between the Scotts and Patti *979 David and regardless of whether the Scotts might have had some sort of interest in that litigation. Because the Scotts are not parties in the Shelby County action, any factually related claims Little Narrows might have against them are not compulsory counterclaims that must be asserted in that action. Accordingly, Little Narrows is free to assert its claims against the Scotts in a separate action in any appropriate venue without violating § 6-5-440.
Of course, Little Narrows could have elected to assert its claims against the Scotts in the Shelby County action filed by Patti David by first joining them as parties. Principles of judicial economy favor the resolution of claims based on the same facts — and certainly claims asserting breaches of the same contract — in a singular action. Separate trials for claims based on the same underlying facts waste scarce judicial resources and raise the possibility of inconsistent verdicts. Nevertheless, in spite of the strong policy reasons that favor resolving Little Narrows’ claims against the Scotts in the same action as Patti David’s claims against Little Narrows, Rule 13(a) cannot be used as a mechanism to force that result.[4]
IV.
Rule 13(a) requires a person against whom a claim has been asserted to state as a counterclaim any potential claims he or she has against “any opposing party” if those claims arise out of the same transaction or occurrence that is the subject matter of the original claim. The failure to do so results in the waiver of those potential claims. In this case, Patti David asserted claims against Little Narrows, and Little Narrows then asserted, in a different venue, claims against the Scotts. However, even though those claims asserted by Little Narrows in the Jefferson County action were based on the same facts and circumstances as the claims previously asserted by Patti David in the Shelby County action, they were not counterclaims that Little Narrows was required to assert in the action initiated by Patti David because the Scotts were not “opposing parties” in that case. Thus, Little Narrows, as the defendant subject to the counterclaim rule, did not violate the prohibition in § 6-5-440 against maintaining two actions for the same cause by filing its action in the Jefferson Circuit Court, and the order of the Jefferson Circuit Court dismissing this case was in error; that order is reversed and the cause remanded.
APPLICATION FOR REHEARING GRANTED; OPINION OF MARCH 7, 2008, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs specially.

. Little Narrows alleges that both the listing agreement and the addendum are defective; however, that claim is irrelevant to the issue presented in this case.

. Morton works for Isaac David's businesses; Martin is an attorney who was representing Little Narrows.

. Little Narrows also raises the issue whether the Scotts’ attorney should be disqualified. However, the attorney whose disqualification was sought withdrew while this case was pending on appeal and that issue is thus moot. Little Narrows has also argued that its motion for a summary judgment should have been granted; however, this Court will not entertain the attempted appeal of a denial of a motion for a summary judgment. See Continental Cas. Co. v. SouthTrust Bank, N.A., 933 So.2d 337, 340 (Ala.2006) ("Although we will review on the merits the summary judgment for [the appellee], we cannot entertain [the appellant’s] attempted appeal of the denial of its own motion for a summary judgment. ' "Such an order is inherently non-final and cannot be made final by a Rule 54(b) certification .... An order denying summary judgment is interlocutory and nonappealable.” ’ Fahey v. C.A.T.V. Subscriber Servs., Inc., 568 So.2d 1219, 1222 (Ala.1990) (quoting Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 257-58 (Ala. 1988)).").

. This Court has not yet had occasion to consider whether the strong policy reasons favoring the resolution of all claims based on the same facts in one action are sufficient to merit the transfer of an action based on "the interest of justice” as that term is used in Alabama’s fonun non conveniens statute, § 6-3-21.1(a), Ala.Code 1975 ("With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein ....”).