XEROX CORPORATION, Appellee,

v.

SCM CORPORATION, Appellant,

v.

VAN DYK RESEARCH CORPORATION, a New Jersey Corporation, and Bernard R. Hellring, as Receiver in Proceedings for an Arrangement under Chapter XI of the Bankruptcy Act, Third-party Defendants.

No. 77–1888.

United States Court of Appeals, Third Circuit.

Argued Feb. 27, 1978.

Decided May 17, 1978.

Clyde A. Szuch, Frederick L. Whitmer, Pitney, Hardin & Kipp, Morristown, N. J., for appellee; George W. Whitney, Richard S. Clark, Brumaugh, Graves, Donohue & Raymond, New York City, Ronald Zibelli, Barry Kesselman, David E. Pitchenik, Xerox Corp., Stamford, Conn., of counsel.

Stephen Rackow Kaye, Michael A. Cardozo, Bettina B. Plevan, Proskauer, Rose, Goetz & Mendelsohn, New York City, for appellants; Benjamin P. Michel, Riker, Danzig, Scherer & Debevoise, Newark, N. J., Milton Wolson, SCM Corp., New York City, of counsel.

Before ADAMS, HIGGINBOTHAM, Circuit Judges, and BECHTLE, District Judge.*

OPINION OF THE COURT

HIGGINBOTHAM, Circuit Judge.

SCM Corp. (SCM), brings this case before this Court by interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1970) from District

---

* Honorable Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Judge Stern's order denying SCM's motion to dismiss the complaint brought by Xerox Corporation (Xerox). The Xerox complaint filed in the District of New Jersey on September 24, 1976, alleged that SCM infringed nine of Xerox's patents "by using, demonstrating for sales purposes and selling electrophotographic copying machines designated the SCM 6740 [copier] . . ." SCM, in a motion to dismiss, claimed that Xerox should have raised its patent infringement claim as a compulsory counterclaim before District Judge Newman in Connecticut where SCM is litigating major antitrust claims against Xerox. Judge Stern denied SCM's motion to dismiss and held that Xerox's claims were not compulsory counterclaims under Federal Rules of Civil Procedure, Rule 13(a) because Xerox's patent infringement claim did not arise out of the same transaction or occurrence involved in the Connecticut antitrust litigation.

The sole issue raised before this Court is whether Judge Stern erred as a matter of law in denying SCM's motion to dismiss.[1] We find no such error and, in agreement with Judge Stern, we affirm his holding that the New Jersey litigation did not arise out of the same transaction or occurrence as the Connecticut litigation.

## I.

In the Connecticut litigation SCM charged that Xerox violated § 1 and § 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1970), and § 7 of the Clayton Act, 15 U.S.C. § 18 (1970), by committing several anti-competitive practices in the sale, manufacture and marketing of plain paper office copiers. A major element of SCM's § 2 Sherman Act claim against Xerox alleged that Xerox misused its *entire* patent portfolio.[2] Xerox counterclaimed against SCM for infringement of two Xerox patents relating to coated paper copying. The validity and infringement issues relating to those two Xerox patents were severed for separate trial by Judge Newman.

Van Dyk Research Corporation (Van Dyk), a New Jersey corporation, manufactured and sold to SCM the copiers which SCM sold as the SCM 6740.[3] Van Dyk filed a petition for arrangement under Chapter XI of the Bankruptcy Act on October 6, 1975. On September 27, 1975, the same day that Xerox filed its patent infringement suit against SCM in New Jersey, it filed a complaint in the Bankruptcy Court for a termination or modification of the automatic stay on the commencement of proceedings against Van Dyk.[4] Xerox contended before the Bankruptcy Court that the interest of judicial economy would be best served if its patent infringement claims relating to the SCM 6740 machine were tried in one action against both SCM and Van Dyk. Bankruptcy Judge Vincent Commisa denied Xerox's request for relief from the automatic stay under Rule 11–44[d] on March 25, 1977. On May 23, 1977, SCM in this action, filed a third-party complaint against Van Dyk and its receiver, Bernard R. Hellring. The substance of the com-

1. In their briefs, neither party directed this Court to the appropriate standard of review applicable in this case. On oral argument counsel for SCM maintained that the appropriate standard was whether an error of law had been committed below. Xerox's counsel stated that the resolution of this issue involved both legal and factual determinations. Although we recognize the need to review the facts to determine whether the same transaction or occurrence is involved in the New Jersey and Connecticut cases, we are essentially determining whether Judge Stern erred as a matter of law in finding that Xerox's claim was not a compulsory counterclaim. The resolution of the Rule 13 issue is the "controlling question of law" involved in this interlocutory appeal.

2. In oral argument on April 11, 1977, before Judge Stern, Mr. Stephen Kaye, representing SCM stated that Xerox's patent portfolio relevant in the Connecticut action consisted of approximately 1800 U.S. patents.

3. Van Dyk marketed these plain paper copiers as its Model 4000.

4. Rules of Bankruptcy Procedure Rule 11–44[a] provides for an automatic stay of the commencement of proceedings against the debtor. Rule 11–44[d] allows for the filing of a complaint seeking relief from the stay provided under the rule whereby a bankruptcy judge can terminate, annul, modify or condition the stay when cause is shown by the complainant.

plaint involves a purchase agreement entered into by Van Dyk and SCM which contained provisions for Van Dyk to indemnify SCM for liabilities based on infringement by the Van Dyk 4000.

SCM, in response to Xerox's complaint filed in New Jersey, moved for a preliminary injunction in the Connecticut litigation to prevent Xerox from prosecuting claims raised in New Jersey before the termination of the Connecticut action. Judge Newman denied SCM's motion for a preliminary injunction and left to the New Jersey court the resolution of all issues concerning the conduct of the Xerox patent infringement litigation, including the question of whether Xerox's claims in New Jersey were compulsory counterclaims in the Connecticut action. Judge Newman found that:

> It is sufficient to determine that the possibilities of litigating in New Jersey only issues of patent validity and infringement that are not at all involved in this lawsuit are sufficiently real so that in the present posture of both lawsuits, injunctive relief is not presently warranted.

Pre-Trial Ruling No. 38, Civ. No. 15,807, (D.Conn., filed January 28, 1977).

Judge Stern severed the patent validity and infringement issues from the trial on SCM's defense of patent misuse. Judge Stern determined that this procedure would best serve the interest in avoiding substantial duplication of time and effort by the court and the parties; thus, he denied SCM's motion to dismiss the Xerox complaint and held that Xerox's patent infringement claim was not a compulsory counterclaim in the Connecticut litigation.

## II.

■ *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961), established that the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. [A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties. The *Great Lakes* analysis has been generally used by several federal courts as was noted by the Supreme Court in *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974).

SCM argues that the claims arise out of the same transaction and occurrence and demonstrates this by comparing two paragraphs in the complaints. Specifically, SCM refers to paragraph 72 of its second amended complaint:

> Since 1974, SCM has been engaged in the marketing of a plain paper office copier, its model "6740." SCM intends to continue marketing such copier and, starting in 1976, to market another model of a plain paper office copier presently being developed by it.

SCM compares the above portion of its complaint to paragraph 13 of the Xerox complaint:

> Defendant, SCM, has infringed said Letters Patent identified in Paragraphs 4–12 above by using, demonstrating for sales purposes and selling electrophotographic copying machines designated the SCM 6740 [copier] at its regular and established place of business within this judicial district.

We do not agree with SCM in its conclusion that these complaint provisions demonstrate that the two claims arise out of the same transaction or occurrence. SCM has, in effect, isolated one paragraph relevant to its fourth claim for treble damages and injunctive relief from its one hundred and two paragraphs amended complaint alleging major antitrust violations. While both paragraphs refer to the marketing of SCM copiers, this sole connection falls far short of demonstrating a logical connection under *Great Lakes*. The issues presently involved in these cases are not the same nor are many of them the same. In fact, Judge Newman specifically stated that the issues of patent validity and infringement "are not at all involved in this [Connecticut] lawsuit. . . ." Also, litigation of Xerox's infringement claim would not substantially duplicate the time and effort spent in the Connecticut litigation. Judge Stern's order severing the trial of the validity and infringement issues from those issues that are pending in Connecticut ensures that no substantial duplication will occur; in fact, the need to try those duplicative issues involving the defense of patent misuse may be eliminated. Finally, the factual proof of validity and infringement is vastly different from proof of an anti-trust violation or patent misuse.

In its brief, SCM cites three cases[5] in support of its theory that where a counterclaim involved "the sale of the product alleged to be interfered with by the defendant's illegal practices," the counterclaim and the original claim were held to arise out of the same transaction or occurrence. However, none of these cases support finding a compulsory counterclaim in this case. All of the counterclaims alleged unfair competition in the context of an anti-trust or unfair competition case and presented parallel facts *and* legal issues to those raised by the plaintiffs. Also, SCM points to a line of cases which it claims show that "a patent misuse claim arises out of the same 'transactions or occurrences' as a patent infringement claim. One is a compulsory counterclaim to the other." First, in this Circuit the necessity to analyze the facts and issues involved in the counterclaim militate against the use of any general rule. Second, the cases cited by the plaintiff do not establish the existence of any general rule of law relating to compulsory counterclaims. For example, in *United Artists Corp. v. Masterpiece Productions, Inc.*, 221 F.2d 213 (2d Cir. 1955), the court held that a counterclaim alleging conspiracy on the part of the plaintiffs to deprive the defendants of their rights in order to cement plaintiffs' control in the corporation was compulsory where plaintiffs brought an action alleging copyright infringement and unfair trade practices. The court found a sufficient logical relationship because defendants claimed that plaintiffs' lawsuit was "one of a series of harassing maneuvers designed to interfere with defendants' proper exploitation of rights . . ." 221 F.2d at 216. *Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970), involved an action brought by a licensor alleging trademark infringement, a common law action of unfair competition and breach of contract. The court held that a counterclaim alleging that the licensor engaged in a fraudulent scheme to breach a dealership agreement was compulsory because the issues were simple, logically related and both claims raised matters requiring similar proof relating to the quality of the products. Both of these cases demonstrate the requirement of finding a logical relationship; neither proffer a *per se* general rule of law.[6]

---

5. *Natcontainer Corp. v. Continental Can Co.*, 362 F.Supp. 1094 (S.D.N.Y.1973); *General Foods Corp. v. Struthers Scientific Corp.*, 301 F.Supp. 354 (D.Del.1969); *Affiliated Music Enterprises, Inc. v. Sesac, Inc.*, 55 CCH Trade Cases ¶ 68,060 (S.D.N.Y.1955).

6. At oral argument SCM presented another case, *Independence Tube Corp. v. Copperweld Corp.*, 74 F.R.D. 462 (N.D.Ill.1977), which held that where the complaint alleged violations of the Sherman Act and state law claims including breach of contract, tortious interference, slander and libel, a counterclaim alleging state law violations of unfair competition, unfair trade practices and defamation was a compulsory counterclaim subject to the ancillary jurisdiction of the federal court. The Illinois district court applied the logical relationship test and

SCM has failed to demonstrate, and this Court does not find, a logical connection between the Connecticut and New Jersey cases. Furthermore, the enormous burden that would be placed upon Xerox which would be compelled to raise its infringement claims as counterclaims and the resultant delay in appending infringement claims to major anti-trust cases are persuasive factors militating against SCM's arguments. Judge Stern recognized the inherent difficulties of SCM's position.

> Here, to hold that the patent infringements claimed by Xerox are compulsory counterclaims, would be to hold that the holder of a patent, which is presumptively and facially valid, and who is thereafter sued in a massive antitrust suit alleging virtually every aspect of its business conduct, that such a one must immediately counterclaim with any and every and even, perhaps, every potential claim of infringement against that plaintiff or else lose such claims forever.

We find no error in Judge Stern's denial of SCM's motion to dismiss and agree with his rejection of SCM's arguments to the contrary.[7]

The judgment of the district court will be affirmed.

found that the essential facts alleged by the plaintiff constituted, in part, the defendant's counterclaim. SCM maintains that Independence Tube, *supra*, is an illustration of how a counterclaim challenging the plaintiff's entry into the market is compulsory when the plaintiff's action challenged the defendant's manner of entry. To the contrary, we do not find a general rule of law emanating from Independence Tube; instead the Illinois court followed the logical relationship test and under that analysis concluded that the counterclaim was compulsory because the claims both involved many of the same factual issues.

7. Both parties have briefed the issue of whether Xerox knew that it had an opposing claim but delayed litigating its patent infringement claim. Judge Stern did not rule on this issue and because of the conclusion we reach in this opinion, we find it unnecessary to reach this issue.

By solely filing a motion to dismiss Xerox's New Jersey patent infringement case, SCM has engaged in legal brinksmanship seeking a total victory whereby the merits of Xerox's infringement claim could never be judicially determined. There was a less drastic option pursuant to 28 U.S.C. § 1404(a)—a motion to transfer the case to Connecticut so that any related aspects could be coordinated with the pending Connecticut case. Even though SCM has been denied its motion to dismiss, our ruling is without prejudice to any motion being filed hereafter under § 1404(a).