**KOPPERS COMPANY, INC., Plaintiff,**

**v.**

**AMERICAN EXPRESS COMPANY, a corporation; Shearson Lehman Brothers Holdings Inc., a corporation; Shearson Lehman Hutton Inc., a corporation; SL–Merger, Inc., a corporation; BNS Partners, a partnership; BNS Inc., a corporation; Bright Aggregates Inc., a corporation; and Beazer PLC, a public limited company, Defendants.**

Civ. A. No. 88–557.

United States District Court,
W.D. Pennsylvania.

March 17, 1988.

the same day, defendants filed a Motion to Dismiss on the grounds that this action is actually a compulsory counterclaim in an action already pending in the United States District Court for the District of Delaware; that case was brought by one of the defendants here, BNS, Inc., which is the sole plaintiff in the Delaware case. In Delaware, the defendants are Koppers (which is a Delaware corporation), the individual members of the Board of Directors of Koppers, the Attorney General and the Secretary of the State of Delaware.

As an alternate argument to the compulsory counterclaim issue, the defendants also averred that this action should be transferred to the United States District Court for the District of Delaware for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. section 1404(a).

The Delaware action was instituted on March 3, 1988, the same day that BNS, Inc. commenced its Tender Offer for the shares of Koppers. In the Delaware action, BNS, Inc. challenges the constitutionality of the Delaware takeover (or anti-takeover) statute, and the "poison pill," or "rights" plan adopted by Koppers' Board of Directors. In the case in this court, Koppers alleges in two counts that both the Tender Offer by BNS, Inc., and the Schedule 14D–1, which BNS Inc. filed with the Securities and Exchange Commission, fail to disclose material information in violation of the Williams Act. 15 U.S.C. § 78n. In a separate count, Koppers alleges that, from October 17, 1987 through March 2, 1988, a period during which Koppers allegedly bought back 476,000 shares of its stock, defendants Shearson Lehman Brothers Holdings Inc. and/or Shearson Lehman Hutton Inc. instituted transactions in Koppers stock, which artifically inflated the price of that stock. Koppers avers that it was damaged because it had to pay an artificial premium for the stock it purchased during that period.

On March 11, due to my absence, Judge Gustave Diamond of this court heard arguments on defendants' 2–part motion for transfer or dismissal. Judge Diamond de-

Joseph A. Katarincic, David Borkovic, Kirkpatrick & Lockhart, Edward B. Wood, Koppers Co. Law Dept., Pittsburgh, Pa., for plaintiff Koppers Co., Inc.

William M. Wycoff, Ralph Scalera, Craig Frischmann, Thorp, Reed & Armstrong, Pittsburgh, Pa., Edwin B. Mishkin, Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants BNS Partners, BNS Inc., Bright Aggregates, Inc., and Beazer PLC.

James D. Morton, Stanley Yorsz, Buchanan Ingersoll P.C., Pittsburgh, Pa., Stephen Greiner, Willkie, Farr & Gallagher, New York City, for defendants American Exp. Co., Shearson Lehman Bros. Holdings, Inc., Shearson Lehman Hutton, Inc., and SL–Merger, Inc.

Theodore O. Struk, Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for defendant National Westminster Bank PLC.

## OPINION

COHILL, Chief Judge.

On March 11, 1988, plaintiff Koppers Company, Inc. filed this action against the eight entities named as defendants. On

48

nied the motion for transfer pursuant to section 1404(a) (forum non conveniens). He deferred a decision on the defendants' argument that this action should be dismissed because it is a compulsory counterclaim to the action filed in the U.S. District Court for the District of Delaware, so that the issue could be briefed and argued before me. Yesterday, I heard arguments on the motion.

■ Compulsory counterclaims are initially defined by Rule 13(a) of the Federal Rules of Civil Procedure, which provides that a compulsory counterclaim is one that:

arises out of the transaction or occurence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The Third Circuit Court of Appeals has explained that "the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir.1978). The court went on to say:

a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961).

*Xerox,* 576 F.2d at 1059.

■ I emphasize that the rule is one of *judicial economy,* as illustrated by the Third Circuit Court's concern with needless and "substantial duplication of effort and time by the parties and the courts." As a guideline for analysis, the Third Circuit Court has reiterated its suggested consid-erations of whether the two claims involve "(1) many of the same factual issues; (2) the same factual and legal issues; and (3) offshoots of the same basic controversy between the parties." *Xerox Corp. v. SCM Corp.*, 576 F.2d at 1059.

■ Applying the test from *Great Lakes Rubber* to the facts of this case, we must examine whether this action is so logically related to the Delaware action that separate trials or hearings, here and in Delaware, "would involve a substantial duplication of effort and time by the parties and the courts."

■ We begin by noting that the issues of fact and law are distinct and separate in this case as opposed to the Delaware action. The Delaware case revolves around issues that are almost entirely legal in nature; there are no significant factual issues there. By contrast, there are numerous factual issues here to be resolved, regarding the adequacy of the tender offer, the Schedule 14D–1 disclosure under the Williams Act, and quite separately the question of Shearson's dealings in Koppers' stock under the Williams Act. The Delaware court's resolution of the constitutionality of the Delaware statute, and the validity of Koppers' so-called "poison pill" will have no bearing on the issues before this court, and vice versa. Thus, we see no possibility that there will be needless duplication of effort by this court and the Delaware court.

We note further that the parties in both suits are far from identical. The defendants in the Delaware action are comprised of Koppers and various individual defendants. The lone plaintiff in the Delaware action is BNS, Inc., a legal entity distinct from the other parties named as defendants in this action. The other seven defendants here are not plaintiffs in the Delaware case. Defendants here argue in support of their motion that all of the defendants who are not presently in the Delaware action as plaintiffs (only BNS, Inc. is a plaintiff in Delaware) will submit to the jurisdiction of the Delaware court for the purposes of a counterclaim. However, the

involvement of different and distinct parties in the two actions reinforces our belief that maintenance of two actions, in this court and in Delaware, will not result in a needless duplication of judicial effort, and, indeed, will be a more judicially efficient method of resolving the issues raised.

Defendants have cited the case of *Crouse–Hinds Co. v. Internorth, Inc.*, 634 F.2d 690 (2d Cir.1980), in which claims challenging a tender offer by one party and a so-called "Exchange Offer" by the other parties were determined to be so interrelated that one was a compulsory counterclaim to the other. In our view, that case is readily distinguishable. The various claims in the *Crouse–Hinds* case were much more closely related than the claims here and in Delaware. Apparently, there were no constitutional issues in *Crouse–Hinds* at all; instead, the claims were apparently largely grounded in the Williams Act. While the claims in this court are grounded in the Williams Act, the claims before the Delaware court are not. The case of *H.K. Porter Co. v. Fansteel, Inc.*, [1975–76] Fed. Sec.L.Rep. (CCH) ¶ 95,546 (S.D.N.Y.1976) [available on WESTLAW, 787], also cited by defendants is likewise readily distinguishable on similar grounds.

One of the unspoken rationales underlying the rule that compulsory counterclaims must be brought in the same action as the primary claim, is a desire to avoid subjecting the parties to inconsistent results in different forums. *See Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed. 2d 210 (1979). Thus, the doctrine of *res judicata* applies to bar claims which should have been brought as compulsory counterclaims in an earlier action. The doctrine of *res judicata* generally applies when a claim has already been adjudicated in a prior proceeding, and requires an identity of issues and parties (or their privies). *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980); *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir.1985). Similarly, the doctrine of *res judicata* applies in the context of compulsory counterclaims because compulsory counterclaims involve issues and parties substantially identical to the issues and parties in the primary claim. However, as we have already noted, the issues before the Delaware court have no bearing on the issues before us, and vice versa. As Judge Diamond aptly noted, there is no danger of inconsistent results from this court and the Delaware court. *See* Transcript of Hearing before Judge Diamond, at 19 (March 11, 1988).

Another factor is the fact that Chief Judge Murray Schwartz, in Delaware, has had the action there under consideration since the action was filed on March 3, 1988, and has committed himself to issuing a decision by March 30. Judge Schwartz has issued a briefing schedule, and some deadlines have already passed. The Third Circuit Court in the *Xerox* case saw fit to recognize that:

> the enormous burden that would be placed upon Xerox which would be compelled to raise its infringement claims as counterclaims and the resultant delay in appending infringement claims to major anti-trust cases are persuasive factors militating against SCM's arguments [to the effect that the patent infringement claim should be dismissed because it was a compulsory counterclaim in the anti-trust case].

576 F.2d at 1059. We recognize that the overriding concern in this analysis is one of judicial efficiency. Chief Judge Schwartz, in attempting to accomodate the parties in the Delaware action, has announced a schedule in which the additional issues raised by the claims before us can hardly be adequately addressed. Indeed, we are on such short notice of the motions before us, and preoccupied with trials and conferences previously scheduled in the normal course of court business, that we despair of exhaustively addressing the authority and the nuances of the arguments raised by the able counsel on all sides of this case, even though we wish we could.

Considered from another perspective, let us suppose for a moment that these actions had been filed in reverse order ... that the action in this court had been filed first, and that the Delaware action followed. In answer to a question from the bench, defend-

ants stated that under those circumstances, the Delaware action should not be dismissed as a compulsory counterclaim to the action in this court, because Delaware has an overriding interest in the issue of the constitutionality of the Delaware statute. Thus, it would seem to follow from that, that defendants would seek to have us dismiss this case, even if it had been filed before the Delaware action. In other words, they would have all the claims heard in Delaware, regardless of sequence. We are somewhat puzzled by this. If the first action had been brought in this court, venue would certainly appear to be proper here to hear the claims from the Delaware action as a compulsory counterclaim. *See* 6 C. Wright & A. Miller, Federal Practice & Procedure § 1416 (1971).

It is not crystal clear to us, although it seems conclusively clear to defendants, that the claims related to the Delaware statute have to be heard in the district court in Delaware, as opposed to any other federal court. That is at least one issue that we do not have to decide today.

Certainly, any federal court would be competent to entertain a constitutional challenge to a state statute. Of course, a federal court may be asked to remove a suit challenging the constitutionality of a state statute to a federal court in that state pursuant to section 1404(a) of Title 28. Local interest may be an important factor in such a case, but it would not necessarily be the overriding factor. Venue may be transferred to another federal district court where jurisdiction is proper, for the convenience of the parties and witnesses and in the interests of justice under section 1404(a). Local interest is a factor in the 1404(a) analysis, but it is only one of many factors, the most important of which is plaintiff's choice of forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed.2d 1055 (1947); *Sandonas v. Weirton Steel Corp.*, 648 F.Supp. 1549 (W.D.Pa.1986). Local interest is certainly not determinative in the decision of which United States District Court is the proper venue to hear a compulsory counterclaim.

This brings us to what we consider to be a fundamental inconsistency in defendants' argument. Defendants argue that the sufficiency of the tender offer under the Williams Act is already in issue in the Delaware action, because BNS, Inc. avers in its Delaware complaint that its tender offer complies with the Williams Act. In our view, the allegation in the BNS Inc. Delaware complaint is perfunctory, and really not relevant to the Delaware action. The Delaware action seeks a declaratory judgment on the constitutionality question and an injunction on the poison pill.

Let us assume for a moment that defendants are correct, and that the claims before us and the claims before the Delaware court are related as a primary claim and a compulsory counterclaim. If these actions are so interrelated that one is a compulsory counterclaim to the other, then which one is the primary claim and which one is the compulsory counterclaim? The claim filed first is not necessarily the primary claim. *See* 6 C. Wright & A. Miller, Federal Practice & Procedure § 1418 (p. 104–105). This is a classic chicken and egg problem. Which comes first? If, as defendants argue, the Williams issues must be adjudicated before the constitutional and poison pill issues in the Delaware action can be addressed, then logically the claim before this court is the primary claim, and the claim before the Delaware court is the compulsory counterclaim; again, following defendants' logic, that action should then be stayed or dismissed. The defendants can't be suggesting that this action should have been filed first; it was impossible for Koppers to file first. Koppers could not file this action before the Tender Offer commenced, and of course BNS, Inc. preempted Koppers in a classic race to the courthouse steps, but the race was decidedly lopsided, because BNS Inc. alone controlled the event which triggered all claims, the commencement of the tender offer. We don't agree with defendants on this point, but if defendants are correct, and the issues in this action must be adjudicated before the issues in the Delaware action can be addressed, then defendants have the option of asking the Delaware court to stay

its proceedings pending the outcome of this action.

We find that there is no compulsory counterclaim relationship between the claims here and the claims before the Delaware court. Consequently, we will deny defendants' motion to dismiss this action as a compulsory counterclaim to the Delaware action.