**In re GLOBAL INDUSTRIAL TECHNOLOGIES, INC., et al., Debtors.**

**Harbison–Walker Refractories Company and DII Industries, Inc., Movants,**

**v.**

**Ace Property & Casualty Insurance Company, Century Indemnity Company, Insurance Company of North America, Westchester Fire Insurance Company, Pacific Employers Insurance Company and St. Paul Mercury Insurance Company, Respondents.**

**No. 02–21626 JKF.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 15, 2004.

Amy M. Tonti, David Ziegler, Gregory L. Taddonio, Lisa R. Kerszencwejg, Nicholas R. Pagliari, Paul M. Singer, Reed Smith LLP, Pittsburgh, PA, for Debtors.

Peter Nicholas Pross, Eckert, Seamans, Cherin & Mellott, LLC, Pittsburgh, PA, for Defendant The Stierling Group.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the Court is the motion to enforce the automatic stay filed by Harbison–Walker Refractories Company ("Harbison–Walker") and DII Industries, LLC ("DII" or "Dresser"), both of which were nondebtors when the motion was filed. Since that time DII filed a prepackaged Chapter 11 case on December 16, 2003, Bankruptcy No. 03–35593.[2]

■ The motion seeks to enforce the automatic stay of 11 U.S.C. § 362(a) [3] with respect to an action filed in the Supreme Court of the State of New York on behalf of various insurance companies, the Respondents in this motion, and to have the New York Action declared void *ab initio* because it was filed in violation of the stay. In this Circuit, actions filed in violation of the automatic stay are void *ab initio*. *In re Siciliano*, 13 F.3d 748 (3d Cir.1994).[4] We find that because the New York Action implicates property of this Debtor's estate, it is void *ab initio* insofar as it implicates insurance policies in which Debtor has an interest and which it shares with any of the defendants in the New York Action. Furthermore, the same issues that are before this court in two adversary proceedings are raised in the New York Action.

The corporate history of Debtor and DII is as follows:

In 1865, Harbison–Walker Refractories Company ("Original Harbison"), then known as the Star Fire Brick Company, was formed for the purpose of manufacturing and selling refractory products. In 1967, Original Harbison was merged into Dresser, and became an unincorporated operating division of Dresser (the "Harbison Division"). In 1992, pursuant to a

---

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law. Usually the Court includes in its Memorandum Opinions the names of counsel who have appeared at hearings on behalf of various parties in interest. In this instance the number is numerous. For the names of parties and counsel who appeared the reader is referred to the transcript of the hearing held on November 21, 2003, at Docket No. 2331.

2. A motion for joint administration has been filed on behalf of the following debtors:
Mid–Valley, Inc., *et al.*, Bankruptcy No. 03–35592
DII Industries, LLC, Bankruptcy No. 03–35593
Kellogg Brown & Root, Inc., Bankruptcy No. 03–35595
KBR Technical Services, Inc., Bankruptcy No. 03–35596
Kellogg Brown & Root Engineering Corporation, Bankruptcy No. 03–35597
Kellogg Brown & Root International, Inc. (a Delaware Corporation), Bankruptcy No. 03–35599
Kellogg Brown & Root International, Inc. (a Panamanian Corporation), Bankruptcy No. 03–35600

BPM Minerals, LLC, Bankruptcy No. 03–35601

3. Respondents assert that the motion is procedurally improper and that an adversary action seeking an injunction or a declaratory judgment should have been filed instead. Although the motion at times speaks in terms of "enjoining" Respondents, it basically seeks to enforce the stay. Inartful use of terms does not necessarily dictate the proper form of a pleading.

4. Although actions taken in violation of the stay are void *ab initio*, the court in *Siciliano* found that § 362 contains an exception in that it permits the court to annul the stay. In the matter before us no request to annul the stay has been made. However, because we find that the New York Action implicates property of the bankruptcy estate we find that the New York Action violates the stay, at least insofar as it implicates insurance policies that Debtor shares with any of the defendants in that suit. We also note that the New York Action would be stayed against DII, a named party to that suit, inasmuch as DII has filed its own chapter 11.

Distribution Agreement, the assets comprising the Harbison Division were sold to Indresco, Inc. ("Indresco"), a wholly owned subsidiary of Dresser, in exchange for Indresco's assumption of certain specified liabilities of Dresser. Shortly thereafter, Dresser distributed the common stock of Indresco to its shareholders, leaving Indresco as a stand alone company. Indresco eventually changed its name to Harbison–Walker Refractories Company, and is the Debtor in these proceedings.

Between 1967 and 1984, various insurance companies or insuring entities issued insurance policies (the "Shared Insurance Policies") to Dresser, which covered, among other things, the Harbison Division as an unincorporated operating division of Dresser. The Shared Insurance Policies are among the insurance policies that are involved in the New York Action which is the subject of Debtor's motion to enforce the automatic stay.

On February 14, 2002, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and has continued to operate its business and has remained in possession of its assets. On March 21, 2002, Debtor filed the "Insurance Adversary Proceeding"[5] against Dresser and several of Debtor's and Dresser's common insurers, including many of the ACE Insurers, seeking declarations concerning the Insurers' obligations to provide indemnification for asbestos-related liabilities of the Debtor, and the respective interests of the Debtor and Dresser in certain shared insurance assets. Most of the Insurers have not answered the Complaint as extensions of time to do so have been granted to facilitate mediation[6] that is in progress.

On August 7, 2001, Dresser filed the "Transferred Insurance Action"[7] against the Insurers. Debtor was not named as a party. Thereafter, the London Market Insurers ("LMI") filed a third-party complaint naming Debtor as a party. LMI also filed a motion to transfer the matter to Federal Court and a motion to transfer the case to the United States District Court for the Western District of Pennsylvania. As of the time the motion to enforce the stay was filed, most of the Insurers had not yet responded to the Complaint due to the aforementioned extensions. LMI asserted that Debtor was an

---

**5.** See *HarbisonWalker Refractories Company, v. Dresser Industries, Inc., et al.,* Adv. No. 02–2151 (Bankr.W.D.Pa.). This adversary is filed in the Harbison–Walker Refractories Company case, Bankruptcy No. 02–21627, which is being jointly administered with the Global Industrial Technologies, Inc., case.

**6.** Shortly after the filing of Debtor's Complaint in the Insurance Adversary Proceeding, this Court referred the parties to mediation in an effort to promote a consensual and comprehensive resolution of their disputes. As of the date the instant motion was filed the Mediation was still in progress. Movants assert, however, that by filing the New York Action the ACE Insurers have demonstrated an intention to litigate their disputes with the Debtor and Dresser and, therefore, Debtor doubts that continued mediation will be fruitful. Debtor nonetheless stated that it and Dresser were willing to attend another mediation session in November 2003, to try to determine whether the Insurers were committed to good faith settlement negotiations. Debtor also states that it and Dresser believe that litigating Debtor's Insurance Adversary Proceeding will lead to the resolution of certain issues that will make it more likely that the Adversary could be settled. The Mediator has not filed a report or a certificate of completion of mediation. See Court Procedures Manual, Procedures Governing Mediation of Matters in Bankruptcy Cases, § 11.2, § 11.3. In addition, this Court has not withdrawn the matter from mediation. *Id.* at § 12.0.

**7.** See *Dresser Industries, Inc. v. Underwriters at Lloyd's London, et al.,* Adversary No. 03–3072, removed from Dist. Ct., Dallas County, Texas, 192nd Judicial District, Cause No. 01–6540

appropriate party to the dispute and necessary for a full resolution of the issues and that the action was related to Debtor's bankruptcy and to Debtor's Insurance Adversary Proceeding. The Transferred Insurance Action ultimately was assigned to this Court on September 19, 2003.

The declarations requested by Debtor in connection with its Insurance Adversary Proceeding are alleged by movants herein to be mirror images of the declarations requested by the ACE Insurers in the *New York Action.* Both actions relate to the insurance policies shared by Debtor and Dresser. Moreover, the declarations requested by Dresser in the Transferred Insurance Action are alleged by movants to be mirror images of the declarations requested by the ACE Insurers in the New York Action (in connection with the insurance policies at issue in the Transferred Insurance Action). For example, Debtor's First Amended Complaint, filed on September 16, 2002, requests a declaration that each domestic Insurer and the London Non–Coverage–In–Place Insurer ("Non–CIP Insurer") have the duty to pay all of Debtor's defense costs and all amounts that Debtor is obligated to pay with respect to every Harbison Asbestos Claim in which any portion of the "continuous or progressive injurious process (including exposure to asbestos or progression of pathology or manifestation) is alleged to have occurred in whole or in part during the effective period of its Shared Insurance Policy." Motion at ¶ 15, citing Debtor's First Amended Complaint at ¶ 88(a).

Dresser's Second Amended Petition in the Transferred Insurance Action requests a declaration, *inter alia,* that each domestic Insurer and London Non–CIP Insurer

has the duty to pay or reimburse all of Dresser's defense costs and all amounts owing as indemnification that Dresser must pay with respect to every asbestos bodily injury claim in which any portion of the continuous or progressive injurious process as described above is alleged to have occurred in whole or in part during the Policy effective period. The New York Action requests a similar declaration with respect to the Shared Insurance Policies:

> [T]he Court should enter a declaration determining ... whether and to what extent Plaintiffs and/or the Insurance Company Defendants have any obligation to defend or indemnify Defendant DII or predecessor or related companies, or to reimburse Defendant DII or predecessor or related companies for any defense or indemnity costs respecting asbestos-related and/or silica-related bodily and/or personal injury claims against Defendant DII or predecessor or related companies under the Dresser/Harbison–Walker line of insurance policies.

Motion at ¶ 17, quoting New York Action Complaint at ¶ 193.18.

The New York Action therefore duplicates requests for relief that are already pending before this Court in the Debtor's Insurance Adversary Proceeding and in the Transferred Insurance Action, both of which have been pending for over 18 months. The Insurers admit that there are various complaints of record in which the same issues are pending but contend that the New York Action will address all of the issues in the other cases and that the New York Action is necessary to avoid piecemeal litigation.[8] The Insurers have not sought or obtained relief from stay to file the action.[9] As of the time of the

---

8. The complaint in the New York Action refers to five pending coverage actions.

9. The motion also alleges that the New York Action places at issue insurance policies unre-

writing of this opinion, most or all of the non-insurer entities involved in the suits are bankruptcy debtors, although not all were debtors when the New York Action was filed.

In addition, the allegations in the New York Action are compulsory counterclaims in the adversary(ies) pending before this Court. *Metropolitan Life Insurance. Co. v. Kubichek,* 83 Fed.Appx. 425 (3d Cir. 2003)(For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim," at 430, quoting *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978)).

> [A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the

doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently. Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.

*Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978). It is clear to this Court that the New York Action meets the test.

Following extended discussions between the Debtor and DII regarding possible solutions to their competing claims to coverage under the Shared Insurance Policies, the parties arrived at a settlement. An order granting the motion to settle was entered on November 21, 2003. *See* Docket No. 2271 regarding Docket No. 1881. The settlement provides, in part, that DII will receive an assignment of certain rights of the Debtor under the Shared Insurance Policies in exchange for, *inter alia,* a payment of approximately $50.1 million and the channeling of asbestos-related and silica-related bodily injury claims against Debtor to trusts to be created in a pre-packaged bankruptcy filing by Dresser, KBR and certain of their subsidiaries or affiliates. That pre-packaged bankruptcy

---

lated to Debtor but which are alleged to be shared with Federal–Mogul Products, Inc., a debtor in the Federal–Mogul Global, Inc. bankruptcy proceeding filed and jointly administered with other related cases in the United States Bankruptcy Court for the District of Delaware. There is already an insurance coverage adversary proceeding pending in the Federal–Mogul bankruptcy which movants assert are mirror images of the declarations sought by the ACE Insurers in the New York Action in relation to the insurance policies that are at issue in both of those cases. *See DII Industries, LLC v. Federal–Mogul Products, Inc., et al.,* Adversary Proceeding

No. 01–09018, Chapter 11 Case No. 01–10578 (Bankr.D.Del.). Movants assert that the Insurers did not name Federal–Mogul as a party to the New York Action as they did not name Debtor. Dresser asserted in the motion at bench that it will file a similar motion to enforce the stay in the Federal–Mogul bankruptcy.

The New York Action also places at issue insurance policies issued to Kellogg, Brown & Root, Inc. ("KBR"), which also filed a Chapter 11 on December 16, 2003. In March of 2002 KBR filed an action in state court in Texas with respect to insurance coverage.

was filed, as mentioned *supra*, on December 16, 2003.

Certain insurers filed a response to motion to approve settlement, reserving the right to argue that the Settlement would have the effect of vitiating some or all rights to coverage, notwithstanding any order entered by this Court. However, an order was entered approving the settlement on November 21, 2003. No appeal was taken from that order but the ACE Insurers filed the New York Action. Inasmuch as the action raises the same issues pending before this Court in two adversary proceedings and apparently deals with the policies that are the subject of the November 21, 2003, order approving the Settle-

ment, the jurisdiction and orders of this Court are implicated. Insofar as the New York Action raises the same issues that are pending here and which will necessarily affect this Debtor's interests and policy rights which are property of this bankruptcy estate, the action is in violation of the stay with respect to this Debtor. Insofar as the New York Action names Dresser, KBR, and any of the other Debtors who filed on December 16, 2003, it is stayed by operation of § 362. Furthermore, inasmuch as it is not disputed that the New York Action involves the same coverage issues that are involved in the Insurance Adversary Proceeding and in the Transferred Insurance Action, we will require that the New York Action be dismissed.[10]

**10.** The Respondents to the motion state that It may be true that, but for their settlement, the debtor and DII both assert claims against some of the policies. And, but for their settlement, the issue of how the policies would be shared by them would remain to be adjudicated, perhaps in the adversary proceeding that Harbison–Walker has previously commenced in this Court, which expressly seeks a declaration of "the extent to which the Shared Insurance Policies and the London Coverage–in–Place Agreement constitute property of the Debtor's estate." The New York action does not seek to adjudicate that issue, and movants can point to no cause of action in the complaint that raises it. Thus, even after New York courts adjudicate DII's alleged rights to recover under the policies, Harbison–Walker and DII could still—but for the settlement would still have to—adjudicate how the policies would be shared. The New York action will not in any way adjudicate how the insurance should be shared between Harbison–Walker and DII. It is for this reason that Harbison–Walker is not a necessary party to the New York coverage action.

Conversely, the ACE Companies' claims against DII could not be adjudicated in this bankruptcy proceeding, which involves a different debtor and does not even put into issue the merits of DII's $4.3 billion settlement with its asbestos and silica claimants. For example, whether DII can obtain cover-

age even though it failed to obtain from the insurance companies consent to its settlement with tort claimants; alternatively, how much of the $4.3 billion settlement is covered by the insurance policies (because some of the settlement amount is not reasonable); or how much of the settlement is properly allocable to the DII policy line [versus the other two policy lines] are issues that are utterly irrelevant to the Harbison–Walker bankruptcy.

Opposition of the ACE Companies to Expedited Motion, Dkt. No. 2252, at 3–4. As we read the complaints in the Insurance Adversary Proceeding and in the Transferred Insurance Action, Respondents' characterization of the relief sough in these two adversary proceedings is incorrect. Although Respondents assert that the New York Action does not seek to adjudicate the extent to which the shared insurance and the London CIP Agreement constitute estate property, any declaration of DII's rights under the policies would in fact have that effect. Furthermore, the Transferred Insurance Action states in its introductory paragraph that Dresser "seeks a declaration of Dresser's rights to be provided insurance coverage on pending and future asbestos-related lawsuits under insurance policies issued by the Defendant insurance companies or pursuant to settlement agreements entered into with" them. Adversary No. 03–3072 at ¶ 1. The Insurance Adversary Proceeding seeks, *inter alia*, declar-

The Insurers assert that "[e]ven if Harbison–Walker, the debtor, had not given up any interest in the policies through its settlement with DII (the 'HW–DII settlement'), it would not be a necessary party to the New York action." Opposition of the ACE Companies to Expedited Motion for DII Industries, LLC and Harbison–Walker Refractories Company to Enforce the Automatic Stay and for Sanctions, Docket No., 2252, at 1. We note first that Debtor has not ceded its interest in the policies, despite the settlement, as the settlement establishes conditions precedent to the relinquishment by Debtor of its rights under the policies which include the filing of a bankruptcy by DII, which condition was satisfied on December 16, 2003, and the confirmation of DII's plan of reorganization, which has not occurred. Debtor, therefore, retains all of its rights under the polices at this time and had such rights at the time the New York Action was filed. We disagree with the Insurers' assertion that although the New York Action "expressly states that it does not seek adjudication for the debtor's rights, and is a declaratory judgment action, [it] cannot take property of the estate". *Id.* A declaratory judgment action against a debtor is an "act to ... exercise control over property of the estate", 11 U.S.C. § 362(a)(3), insofar as it seeks to affect the insurance policies which are estate property. The fact that the action does not name Debtor is not dispositive. We find that Debtor's interests with respect to insurance policies will be adversely affected and perhaps irreparably harmed if the New York Action is permitted to go forward. *See* discussion of *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *infra.* Likewise, the fact that the complaint "expressly carves out any rights of" Debtor, Opposition at 2, does not mean that those rights are not affected inasmuch as a verdict in favor of the Insurers in the New York Action would affect Debtor's rights under the policies. The complaint seeks expressly to adjudicate DII's right to recover under the policies but DII is now a debtor and the New York Action is stayed with respect to it as well. The Insurers assert that Debtor is merely "an additional claimant against policies potentially at issue", *id.,* but to the extent that the amounts

atory relief with respect to the Shared Insurance Policies issued to the Harbison–Walker debtor and/or DII and the London CIP Agreement that Harbison–Walker and DII entered into with various insurers who are defendants in Adversary No. 02–2151. The latter adversary proceeding seeks a declaration of the extent to which the Shared Insurance Policies and the London CIP Agreement are property of the debtor's estate and the debtor's and DII's corresponding rights to coverage. The New York Action also seeks a determination of DII's rights to coverage.

Respondents argue that the issues they raise in the New York Action could not be adjudicated here because a different debtor is involved and the merits of DII's settlement with its asbestos and silica claimants are not at issue. Although Global Technologies and Harbison–Walker are different debtors their estates are being jointly administered. The resolution of coverage issues will affect both debtors (and DII which is now also a debtor). That DII has settled with its asbestos and silica claimants does not require a separate state court action as to whether the settlement is reasonable. To date, issues of insurance coverage with respect to asbestos bankruptcy debtors have been dealt with in some way in the plans of reorganization and the Trust Distribution Procedures that are adopted in the various cases. What this means is that at some point insurance companies who do not settle with the debtors will have an opportunity to resolve coverage issues in an appropriate forum and within the parameters of either the bankruptcy case or the post-bankruptcy Asbestos PI Trust and the corresponding Trust Distribution Procedures. The issues in the New York Action are the same as those presented in the two adversary proceedings and the Respondents' argument as quoted above is without merit.

recoverable under the policies are removed from Debtor's reach by the outcome of the New York Action, Debtor is affected. Debtor's plan will involve its rights under insurance policies. The New York Action therefore will have an effect on the reorganization which could be adverse. The Insurers assert that because the New York Action will not adjudicate how Debtor and DII should share the insurance, Debtor is not a necessary party. However, a declaration of DII's rights under the policies necessarily affects Debtor's interests. At issue in the New York Action is, for example, the question of whether DII can obtain coverage inasmuch as it failed to get the insurers' consent to a settlement with its asbestos and silica claimants. If it is determined that DII is barred from coverage, Debtor's interests may very well be affected (the "DII settlement"). In order to protect its interests Debtor would have to intervene because during at least part of the time that Debtor was an unincorporated operating division of Dresser. Insurance policies were issued which covered Debtor as an unincorporated operating division of Dresser (Debtor was a division of Dresser between 1967 and 1992 and the Shared Insurance Policies were issued between 1967 and 1984). These policies are among those at issue in the New York Action. The Insurers also place at issue in the New York Action how much of a several billion dollar settlement is covered by the policies, challenging the reasonableness of the settlement between DII and its asbestos and silica claimants.[11] The New York Action, according to the Insurers, also seeks to adjudicate the amount of the DII settlement properly allocable to the DII polices versus two other policy lines, including one with respect to KBR, another recent debtor in this court. The Insurers note that the adversary proceeding filed in this court by Debtor does not include a claim by DII with respect to the DII Settlement. Opposition at 7. However, to the extent the same policies are involved in the adversary and the New York Action, the DII Settlement will be affected as will Debtor's rights in those policies. The HW–DII Settlement was reached in this adversary proceeding but has not been consummated because all of the contingencies have not been satisfied. Debtor therefore retains all rights it had before the settlement. The New York Action would affect those rights.

The Insurers assert that DII lacks standing to file this motion. We do not reach the standing issue inasmuch as Debtor is also a movant and clearly has standing.

■ Section 362(a)(1) of the Bankruptcy Code prohibits "the commencement or continuation ... of a judicial ... or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title." Section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 541(a)(1) defines property of the es-

---

**11.** In the asbestos cases pending before this court, the proposed plans of reorganization typically preserve insurers' rights to contest claims that are to be paid under the Asbestos PI Trusts created under the plans. There is no reason to think that the plan in this case and in the DII bankruptcy will contain materially different provisions to the extent they seek to not impair any insurer creditors. We also note that at least some of the things that the Insurers complain of in the New York Action are recurring themes in the asbestos bankruptcy cases such as the fact that Insurers' requests to participate in settlement negotiations between the asbestos defendants (e.g., Debtor, DII, etc.) and the asbestos claimants have been rejected, that the policies include anti-assignment provisions, etc.

tate, with certain exceptions not applicable hereto, as "all legal or equitable interests of the debtor in property as of the commencement of the case." Pursuant to § 541 Debtor's interest in the Shared Insurance Policies is property of its bankruptcy estate. *In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir.2002)("An insurance policy owned by the debtor is generally considered property of the estate.... The central question when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to debtor when the insurer pays a claim"); *Thomas v. Universal American Mortgage*, 1998 WL 57523 (E.D.Pa., Feb.6, 1998), *affirmed* 182 F.3d 904 (3d Cir.1999)(TABLE); *In re Sacred Heart Hospital of Norristown*, 182 B.R. 413, 421 (Bankr. E.D.Pa.1995)(the general rule is that insurance proceeds payable to the debtor are property of the estate)

■ The Debtor's interest in the Shared Insurance Policies is not divisible or subject to segregation from the interests of Dresser under the same policies. Accordingly, any judgment rendered in the New York Action will necessarily have an impact on the interests of Debtor in, to and under the Shared Insurance Policies. Thus, although Debtor is not a named defendant to the New York Action, its interests in the Shared Insurance Policies are sufficiently intertwined with those of Dresser to make it a necessary real party

in interest in that Action.[12] *See Fleet Business Credit, LLC v. Wings Restaurants, Inc.*, 291 B.R. 550, 553 (N.D.Okla. 2003)("Courts have generally extended the automatic stay in the 'unusual situation' where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third-party is entitled to indemnification by the debtor for any judgment taken against it"). *Accord In re Family Health Services, Inc.*, 105 B.R. 937, 942–43 (Bankr.C.D.Cal.1989) (court found that debtor HMO was real party in interest in plaintiffs' action against nondebtor HMO members because judgment against nondebtor defendants would result in indemnification or reimbursement claims against debtor).

The New York Action is thus barred against this Debtor under § 362(a)(1). See *McCartney v. Integra National Bank North*, 106 F.3d 506, 510, 511 (3d Cir.1997) (automatic stay precluded creditor from filing an action under the Pennsylvania Deficiency Judgment Act after a foreclosure sale of property owned by a corporation whose obligation the debtor had guaranteed because creditor would have had to name the debtor in the action; debtor was the real party in interest), citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), where the Court said with respect to § 362(a)(1):

> in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be "unusual circumstances" and certainly " '[s]omething more than

---

12. We also note that Count III of the New York Action seeks a declaratory judgment regarding allocation among the Haliburton Defendants named in the action and the insurance companies involved in what is referred to in that action as the Dresser/Harbison–Walker Line of Policies. Inasmuch as Debtor herein has an interest in those policies and is subject to them, the New York Action most definitely will affect this Debtor's interests and the policies and/or their proceeds are property of this estate. Furthermore, Count VI of the New York Action seeks a declaratory judgment regarding "other terms, conditions, and exclusions" of the same policy line, including the existence and extent of any obligation to indemnify the Haliburton Defendants under this line of policies. *See* Complaint in New York Action at 39 (Index No. 118591/03.)

the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties.' " This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

788 F.2d at 999. *Piccinin* referred to *In re Metal Center*, 31 B.R. 458 (Bankr. D.Conn.1983), where the court found that "severing and remanding [the plaintiff's action against the indemnitee to the state court for trial and judgment would] ... potentially expose[s] Gardner [the indemnitee] to inconsistent judgments." 31 B.R. at 463. While, as we have said, it seems that a ruling sustaining the stay in that case under section 362(a)(1) would have been more logical and appropriate, it is unimportant whether the stay is granted under section 362(a)(1) or on equitable grounds: the result is the same; a stay is proper in such a situation.

*Piccinin*, 788 F.2d at 1000. The court examined the decision in *In re Johns–Manville Corp.*, 26 B.R. 420, 423 (Bankr. S.D.N.Y.1983). The Bankruptcy Court for the Southern District of New York found that

> [t]o permit the third party actions to continue against Manville's insurance carriers will result in a multiplicity of positions and defenses on the part of the insurance carriers and will most likely result in inconsistent decisions and rulings concerning the coverage and liability of the insurance carriers to the third party claimants and to Manville. Such a disorganized and fragmented procedure for resolving such major issues will undermine Manville's attempt at reorganization .... 1. Manville's rights under its insurance policies and all the causes of action arising thereunder constitute property of the Manville estates within the purview of section 541(a) of the Code ... 2. Pursuant to §§ 105(a), the Bankruptcy Court may extend the automatic stay under §§ 362 of the Code to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of Manville's estates or which would frustrate the statutory scheme of Chapter 11 or diminish Manville's ability to formulate a plan of reorganization .... 3. Pursuant to §§ 362(a) of the Code, all actions "to obtain possession of or interfere with property from Manville estates" are stayed and enjoined.

*Johns–Manville*, 26 B.R. at 436.[13] In a later reported decision the same court found that products liability insurance policies constituted assets of the debtor's estate and that if insurers were called upon to make indemnification payments the estate assets would be diminished. *In re*

---

**13.** On appeal the decision was vacated in part; the district court granted relief from stay to the plaintiff in a wrongful death action that had been filed against the plaintiff to allow the plaintiff to seek pretrial discovery of the debtor in aid of defense of a third-party claim; the debtor was the only source from which the plaintiff could seek exculpatory or mitigatory evidence.

*Johns–Manville*, 33 B.R. 254, 261 (Bankr. S.D.N.Y.1983). Further, even though the debtor may not receive all of the proceeds under the policies, that did not mean that the policies were not estate property. *See* discussion in *Piccinin*, 788 F.2d at 1006. The court in *Piccinin* agreed that "the test for granting a stay or injunction" included "(a) possible irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." 788 F.2d at 1006. " '[T]he suits against the defendants would represent an immediate and irreparable impact on the pool of insurance assets, of the existence of sufficiently serious questions going to the merits,' and of the tipping in the defendants' favor in the hardships in a balancing of the debtor's and the plaintiffs'." *Id.* at 1008, quoting *In re Johns–Manville Corp.*, 33 B.R. 254, 262–63 (Bankr.S.D.N.Y.1983). The *Piccinin* court found "unquestioned public interest in promoting a viable reorganization" which outweighed any hardship to the plaintiffs in that case. 788 F.2d at 1008.

In the New York Action declarations regarding the scope of obligations under the Shared Insurance Policies are sought. The Insurers claim that the outcome of the New York Action against DII will not trigger indemnification obligation by Debtor or constitute a *de facto* judgment against Debtor and for this reason § 362(a)(1) and (a)(3) do not apply to bar the action. The existence of an indemnification obligation or risk of judgment are not the sole triggers. The test includes examination of whether the action in question would affect estate property and we find that it will. It is therefore subject to the automatic stay created by § 362(a)(3). "[T]he right to cancel an insurance policy issued to the debtor has uniformly been held to be stayed under section 362(a)(3)." *Piccinin*, 788 F.2d at 1001. Cancellation of a policy and a declaration that would in effect result in Debtor's loss of rights in the policy both have the same consequence to Debtor, i.e., loss of claimed coverage. Again the Insurers argue that because the New York Action is for a declaratory judgment which will not result in payment under the policies there is no effect on estate property. This argument ignores the facts that (1) property of the estate includes *all* interests of Debtor, with certain exceptions not applicable here, and (2) a declaration defining what obligations are owed by the insurers to Debtor will determine what payments will be made under Debtor's policies at some point in time.

We also note that Debtor's indemnification obligations to DII will be affected. Under the Distribution Agreement pursuant to which Debtor was spun off from Dresser, Debtor assumed liability, and agreed to indemnify DII, for asbestos and silica claims asserted against DII after July 17, 1992, net of insurance available to pay such claims. If it is determined in the New York Action that DII does not have coverage under the policies at issue therein, Debtor's obligation to DII would increase commensurate with any liability imposed on DII to the asbestos and silica claimants. We therefore find that the ACE Insurers' filing of the Complaint in the New York Action was a clear violation of the automatic stay and is void *ab initio*.

The Insurers cite *In re Spaulding*, 207 B.R. 899 (9th Cir. BAP 1997). In that case the court noted that the debtor had not been named in a postpetition state court suit filed by insurers seeking a declaratory judgment of its liability to debtor's shareholders and that a ruling in favor of the insurers would not increase the debtor's liability exposure. The Ninth Cir-

cuit, however, has declined to adopt *Piccinin's* unusual circumstances test and in *Spaulding* found that the bankruptcy court's finding that the state court suit implicated estate property would have the effect of bringing into the bankruptcy court property that was not properly considered to be estate property. The court specifically found that the state court suit would not affect the estate or the debtor's creditors. That result does not obtain in the matter before us. *Spaulding* is not applicable to the instant case.

The Insurers also cite *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D.Cal.1989), which involved a prepetition interpleader action. The court held that an interpleader action "is not necessarily subject to the stay." 99 B.R. at 14. However, the debtor itself had initiated the action claiming certain funds and the interpleader was filed by the defendant. *Rett White Motor Sales* does not reflect the situation we are faced with and is not persuasive authority for the position the Insurers take, i.e., it is not authority for the proposition that a declaratory judgment action "cannot come within Section 362(a)(3)." Opposition at 20.

Section 362(h) provides that a debtor injured by a willful violation of the stay "shall recover actual damages" and, in appropriate circumstances, may recover punitive damages.

The Complaint filed in the New York Action makes it clear that the Insurers knew that the policies were at issue in adversaries in this bankruptcy case.[14] Furthermore, the Insurers are sophisticated entities and have extensive experience with the issues presented by this motion, the two adversary proceedings referred to above, and the issues in the New York Action. The filing of the New York Action was an intentional action perpetrated with knowledge that Debtor had filed for bankruptcy protection and therefore was a willful attempt to do an end-run around § 362 by not naming Debtor as a party even though the declaration sought would affect Debtor and its property. Therefore, the action was a violation of the automatic stay for which sanctions are warranted. Movants have asked for attorneys' fees and costs and will be provided an opportunity to file an itemized request for such fees and costs.[15]

We note that on December 9, 2003, the Insurers filed a request that we defer ruling on the motion to enforce the stay in light of DII's impending (and now a fact) bankruptcy filing. *See* Docket No. 2356. We decline to do so. Even if DII files a motion in its own case, as noted above, the fact remains that the New York Action was filed in violation of the stay in *this* case. Although the New York Action with respect to DII is stayed by virtue of DII's bankruptcy filing, the violation of the stay in this case has been established.

An appropriate order will be entered.

## ORDER GRANTING MOTION TO ENFORCE THE STAY

**AND NOW,** this 15th day of **January, 2004,** for the reasons stated in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED and DECREED** that Debtor's and DII's Expedited Motion

---

14. Paragraph 102(a) of the New York Action states that "The Dresser/Harbison Walker line of policies is the subject of an adversary proceeding in the Harbison–Walker bankruptcy pending in the Western District of Pennsylvania."

15. We note that a good faith belief that a particular course of action is lawful "is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Cuffee v. Atlantic Bus. & Community Corp.* 901 F.2d 325, 329 (3d Cir.1990).

to Enforce the Automatic Stay and for Sanctions is **GRANTED.** The action filed in the Supreme Court of the State of New York, County of New York, Index No. 118591/03 was filed in violation of the automatic stay imposed by 11 U.S.C. § 362 and is void *ab initio* inasmuch as it necessarily implicates the Debtor's rights and liabilities under the insurance policies which are the subject of that action and which are also the subject of two adversary proceedings pending in the Bankruptcy Court for the Western District of Pennsylvania.

It is **FURTHER ORDERED** that inasmuch as the New York Action was filed in violation of the stay Respondents shall cause that action to be dismissed or withdrawn forthwith.

It is **FURTHER ORDERED** that sanctions in the form of attorney's fees for Debtor herein are appropriate. To that end Debtor shall file on or before **February 15, 2004,** an itemized request for attorney's fees and costs. Respondents shall file any objections to the reasonableness of such fees and costs on or before **March 15, 2004,** after which the Court shall decide the matter on the pleadings.

It is **FURTHER ORDERED** that punitive sanctions are not appropriate under current circumstances. However, if Respondents fail to cause the New York Action to be dismissed or withdrawn on or before **February 10, 2004,** the Court will entertain a renewed request for punitive sanctions by the Debtor.

The Court notes that all parties identified on the attached Service List have been served with a copy of the within opinion and order. Should Debtor's counsel determine that the parties identified on "Amended 2002 Service List (12/30/03)" should receive a copy, Debtor's counsel shall serve those parties and file an appropriate Certificate of Service with the Clerk of the Bankruptcy Court within ten (10) days.